### LATIMER v. BARD et al.

#### (Circuit Court, W. D. Missouri, C. D.    October 19, 1896.)

#### Nos. 2127–2160.

1. NATIONAL BANKS — INCREASE OF CAPITAL — COMPTROLLER'S CERTIFICATE — COLLATERAL ATTACK.

   Under the national banking law (Rev. St. § 5142), and the amendment of May 1, 1886 (24 Stat. 18), the action of the comptroller of the currency in approving of an increase in the capital of a national bank, and certifying that the amount thereof has been paid in, is conclusive, and the validity of the increase cannot be assailed in a collateral proceeding such as an action to enforce the liability of the stockholders.

2. SAME—STOCKHOLDERS' LIABILITY—ESTOPPEL—LACHES.

   Where the capital of a national bank has been increased, and defendants have received their additional stock, and for several years held themselves out as stockholders, they cannot, when the bank becomes insolvent and they

are assessed to pay its indebtedness, deny their liability upon the ground that the increase of capital was fraudulent, and that they could not have discovered the fraud with ordinary care. More diligence was required of them, and they are estopped by their laches. Upton **v.** Tribilcock, 91 U. S. 45, and Sanger v. Upton, Id. 64, followed.

3. SAME—AGENCY.

The officers, in taking the necessary steps for such increase, act as the agents of the stockholders, and such stockholders cannot set up the fraud of the officers concerning the increase, to defeat the claims of innocent creditors.

4. SAME—POWER TO INCREASE CAPITAL—IRREGULARITIES—STOCKHOLDERS' LIABILITY—ESTOPPEL.

Under the United States statutes, national banks have the abstract power to increase their capital to such a limit as may be approved by the comptroller of the currency, and where stockholders have assented to an increase they cannot set up any defects or irregularities in the exercise of the power, as a defense in an action to enforce their liability. Chubb v. Upton, 95 U. S. 665; Veeder v. Mudgett, 95 N. Y. 295, followed. Scovill v. Thayer, 105 U. S. 143, and Implement Co. v. Stevenson, 13 C. C. A. 661, 66 Fed. 633, distinguished.

These were actions by W. A. Latimer, receiver of the First National Bank of Sedalia, against William E. Bard, Jr., and others, stockholders in said bank, to recover the amount of an assessment made by the comptroller of the currency.

Wm. E. Shirk, for plaintiff.

Pratt, Ferry & Hagerman, for defendants.

ADAMS, District Judge. The several cases consolidated into this action are brought by the plaintiff as receiver of the First National Bank of Sedalia, against divers persons, stockholders of said bank, to recover the amount of an assessment made by the comptroller of the currency of 75 per cent. of the stock held by them respectively. The defendants file a joint answer, setting forth in effect that the stock held by them upon which such assessment was made is part of a pretended increase of stock; that such increase was invalid and unlawful, for the reason, as alleged, that the whole amount of such increase was not paid in. It appears, by the answer, that the original capital of the bank was $100,000; that on September 6, 1890, the shareholders, by a vote of the owners of two-thirds thereof, resolved to increase the capital in the sum of $150,000, so as to make it $250,-000, instead of $100,000, as theretofore; that subsequently certificates for the increase were issued to the subscribers therefor; that thereafter, on January 17, 1891, the comptroller of the currency of the United States duly certified that said bank had increased its capital in the sum of $150,000, with his approval thereof, and further certified that the whole amount of such increase had been paid in. It further appears that the defendants received the certificates representing the stock subscribed and paid for by them prior to October 25, 1890; that during the years 1891 and 1892 the defendants, as such stockholders, received dividends on their stock amounting in the aggregate to 18 per cent. thereof; that, notwithstanding the apparent conformity with all the provisions of the acts of congress relating to the increase of stock, in point of fact at least one-third of the amount of such increased stock was subscribed for by the officers of

the bank, who subsequently issued certificates to themselves therefor, without paying anything for the same; that this was accomplished in the following way and manner, as stated in the answer as amended, that is to say:

"By fictitious and false entries entered in the bank books and records they made a showing of an apparent surplus in the bank's assets for division among themselves as holders of the original capital stock, and went through the form of declaring a dividend therefrom to themselves, and returning the same to the bank as an alleged payment for their shares of the increased stock, whereas no money passed, the whole transaction was a mere sham, there was no surplus (the bank being then insolvent),—and all of which was done with the fraudulent purpose on the part of said officers of appropriating to themselves a part of the increased stock without any payment thereof. All of which was done without the knowledge or consent of any of the defendants, none of them having any knowledge thereof until after the making of the assessment sued on."

It is further alleged in the answer that no profits were made by the bank after the defendants subscribed for the increased stock, and that the dividends which they received, as stated, were paid to them out of the capital which they had paid in; that the officers of the bank falsely and fraudulently represented to the defendants, at the time of taking their subscriptions and receiving their money, that the bank was solvent, that the increase had been lawfully made, and that the same had been fully paid in; that these statements were false, and known to be false by the officers of the bank when making them; that the defendants made their subscriptions and paid in the amount thereof and took their certificates in implicit reliance upon such statements; that the defendants had no knowledge of the falsity thereof, or of the false entries made as aforesaid, or of the alleged illegality of the increase of stock, until after the comptroller of the currency made the assessment against the stockholders on April 13, 1895, and by the exercise of ordinary care could not have discovered or known the truth; that immediately on discovering the facts, after the assessment was made against them, they tendered to the plaintiff the amount received by them as dividends as aforesaid, and offered to deliver up their stock to him, also. To this answer a demurrer is interposed. The defendants' counsel do not rely upon the false representations as such of the officers of the bank, as a defense, but, in argument, contend solely that the increase of capital was void because the whole amount of such increase was not in good faith paid in, and that defendants are entitled to invoke such fact as a defense to this action against them.

The only question for consideration, therefore, is whether or not the alleged fraudulent action of the officers of the bank in figuring out an apparent surplus entitling them as holders of the original stock to a dividend, and appropriating the same to themselves and using it in paying up their quota of the increased stock, rendered invalid and void the entire increase. The national banking law (section 5142, Rev. St. 1878), and the amendment of May 1, 1886 (24 Stat. 18), provide, in effect, that three facts must concur to constitute a valid increase of the capital stock of a national banking association: First, a vote of shareholders owning at least two-thirds of the original capital; second, the whole amount of the increase must

be paid in; third, the comptroller of the currency, by his certificate specifying the amount of increase of such capital, must approve thereof, and certify to the fact of its payment. The pleadings in this case show the requisite vote of shareholders and the requisite certificate of the comptroller. The case shows, by fair inference from the facts pleaded and law necessarily applicable thereto, that the bank, by and through its proper officers, advised the comptroller, among other things, that the increased capital had been duly paid in. Acting upon this advice, and such other information as to him seemed requisite, the comptroller approved the increase, and made the necessary certificate that the amount of the increase had been duly paid in as part of the capital of the banking association.

1. If there was nothing else in this case, I would hold that the action of the comptroller, as last stated, is conclusive of the question of fact certified by him, and that the defendants are not at liberty, in this collateral proceeding, to open the same. The comptroller occupied a position quasi judicial in its character. His finding and certification of the fact now in question was an exercise of the judicial function, and ought not to be disturbed except upon some appropriate direct proceeding to that end. In the case of Casey v. Galli, 94 U. S. 673, the receiver of a national banking association sought to recover from a stockholder the amount of an assessment duly made by the comptroller. The stockholder, among other defenses, set up the fact that the banking association was created under the provisions of the national banking law permitting a state bank to be converted into a national bank, and that two-thirds of the capital stock never authorized the conversion and never accepted the organization certificate, as required by the act of congress as conditions precedent to such conversion. Section 18 of the act provides that when the comptroller shall give to such association a certificate under his hand and official seal that the provisions of the act have been complied with, and that it is authorized to commence the business of banking under it, the association shall be deemed to be a national banking association, the same as if originally organized under the act. The supreme court, in passing on the case, says:

"The plea denies the regularity of the proceedings in the single particular that the owners of two-thirds of the capital stock of the bank did not authorize the directors of said bank to convert it into a national banking association nor to accept an organization certificate as such banking association."

After alluding then to the admission contained in the pleadings that the comptroller's certificate was duly made, the court says:

"The plea proposes to go behind the certificate and contradict it. This cannot be done. The comptroller was clothed with the jurisdiction to decide as to the completeness of the organization, and his certificate is conclusive upon the subject for all purposes of this litigation. It has the same effect, and for the same reason, as his determination and order with respect to the amount to be collected from such stockholders in the event of the failure of the association. No question can be raised in this collateral way as to either. In Thatcher v. Bank, 19 Mich. 196, it is held 'that whether there was any defect in the process of organization was a question for the comptroller to decide, and that his certificate of compliance with the requirements of the act of congress removes any objection which might otherwise have been made to the evidence upon which he acted.' In this we concur."

The case of Smelting Co. v. Kemp, 104 U. S. 636, is a leading case on the conclusiveness of the findings of executive officers of the government upon matters referable by the law to them.   In the opinion in the last-mentioned case it is said:

"In that respect they [officers of one of the executive departments] exercise a judicial function, and therefore it has been held in various instances by this court that their judgment as to matters of fact properly determinable by them is conclusive when brought to notice in a collateral proceeding.   Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or amendment."

To the same effect, also, are the cases of Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030, and U. S. v. Winona & St. P. R. Co., 15 C. C. A. 96, 67 Fed. 948.

Applying the principles of the foregoing cases, it seems to me clear that the action of the comptroller of the currency in certifying that the whole amount of the increase of stock had been paid in, with his approval of the increase, so partakes of the judicial character that it cannot be assailed in this proceeding.   In reaching this conclusion it must be borne in mind that the particular matter which, by the answer, is relied upon as a defense, is, by the act of congress, pointedly referred to the comptroller for his finding and certification.   If, therefore, the finding of any executive officer of the government, in any case, is to be treated as conclusive (except as against direct attack), it seems to me his finding and certificate of this fact ought to be.   The important and diverse business interests of a bank, and the welfare of its stockholders and creditors, demand, in my opinion, that a matter of fact so affecting each and all of these features as the stockholders' relations to the bank, and their liability to its creditors, should be fixed, clearly and definitely, by some decisive authority, and this is what I think congress undertook to do in requiring the comptroller of the currency to find and certify to the fact in question; and as a result thereof to give his approval to the increase. ' The foregoing is decisive of the demurrer in this case, but as other important and grave questions have been argued by counsel I will briefly advert to them.

2. The pleadings, as already seen, show that the defendants received their certificates of stock and became ostensible shareholders prior to October 25, 1890.   From and after that date, at the latest, the bank was held out to the world as possessing a capital of $250,-000, and these defendants allowed themselves to be held out as shareholders of the bank, and, under the law, as liable to creditors to the extent of the amount of stock held by them.   It is a matter of common knowledge, and goes without saying, that the double liability of shareholders in national banks is relied upon by creditors as security for their debts.   Relying upon this security, depositors trusted the bank, and it became indebted to divers persons in such large amounts that at least 75 per cent. of the capital stock (besides all the other assets of the bank) is required to pay them.   The ostensible relation of the defendants to the bank and its creditors was, for five years, that of shareholders.   By their conduct they influ-

enced persons to their injury. They ought, therefore, unless some controlling principle of law is violated, to be held to the liability to which they have apparently been subject. But it is said that they are not bound because they did not know the facts relied upon now as a defense until the failure of the bank, and after the assessment was made by the comptroller against them, and because they could not, by reason of the fraudulent conduct of the officers of the bank, by the exercise of ordinary care, have ascertained such facts sooner. I do not think they can be heard to excuse themselves in this way. They ought to have been more diligent in ascertaining and knowing the facts. They had enjoyed all the privileges of stockholders in corporations of this state, including the full right of personal examination and inspection of books, papers, and documents. They admit that they did, in fact, discover the truth after they were called upon to respond to their apparent liability. This admission shows that the discovery was not only possible, but that when their financial interests required attention they were able to discover the facts of the case. In my opinion they ought to have seriously considered this subject when the financial interests of the bank's creditors required attention.

In the case of Upton v. Tribilcock, 91 U. S. 45, it is said:

"The principle laid down in the charge of the judge, that one who claims to have been drawn into a fraudulent purchase must exercise care and vigilance to discover the fraud, and must be prompt in repudiating his contract on the ground of such fraud, is a sound one. * * * A party must use reasonable diligence to ascertain the facts. * * * Parties who are shareholders, and claim to be relieved on the ground of fraud, must act with the utmost diligence and promptitude."

Applying the foregoing principles to the facts before the court in that case, the supreme court held as follows:

"To subscribe for stock in a corporation in August, 1870, to rest quietly until the year 1873, never making any investigation as to the position in which he stood until that time, and until after the assignee in bankruptcy had made a demand upon him, falls very short of what the law requires. * * * It was his plain duty to have inquired and to have ascertained his position long before he did."

To the same effect is the case of Sanger v. Upton, 91 U. S. 64, where it is said:

"She [the shareholder] was estopped from denying her ownership; she could not assert her title if there were a profit and deny it if there were a loss."

No more can these defendants be allowed to deny their ownership of the stock in question after having taken their certificates, asserted their ownership, and received dividends, in times of prosperity. They allowed five years to elapse, and during this period received profits from the conduct of the business of the bank, permitted debts to be contracted on the strength of their apparent liability under the law for their payment, and their only answer now is that they could not have discovered the alleged fraud by the exercise of "ordinary care." Greater care and diligence than this was required of them. They are therefore estopped by their own laches from denying the liability now asserted against them.

3. Again, the officers of the bank, in taking the necessary steps

for increasing its stock, acted as the agents and trustees of the parties interested in such increase. Their acts are the acts of their principals, and while they may be held to individual liability to their cestuis que trustent for breaches of their trust, neither they nor their principals ought to be heard to assert their own wrong to defeat the claims of innocent third parties who acquired rights upon the faith of what was apparently done. Under such circumstances the equities of creditors are greater than those of defrauded principals even, and to permit such principals now to deny their liability would defeat the ends of justice and work a legal wrong. Ogilvie v. Insurance Co., 22 How. 380; Railway Co. v. McCarthy, 96 U. S. 258; Bank v. Hawkins, 18 C. C. A. 78, 71 Fed. 371; Duffield v. Iron Works, 64 Mich. 293, 31 N. W. 310.

4. It is further argued by defendants' counsel that the entire increase of stock in question was ab initio void, and hence that no question of estoppel can arise against the defendants in this case. They say it was ultra vires and void because one of the essential and statutory requirements was not complied with, namely, "the whole amount of the increase was not paid in." They contend that the paying in of the whole amount of the increase was a fundamental prerequisite to a lawful and valid increase, and that the failure so to have done, as pleaded by defendants, renders the increase absolutely void. This argument proceeds entirely upon the alleged want of power in the bank. Notwithstanding the views already expressed concerning the conclusiveness of the comptroller's certificate, I will briefly consider this view of the case.

Counsel rely mainly on the cases of Winters v. Armstrong, 37 Fed. 508, and Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 44, in the last of which the supreme court says:

"It appears that three things must concur to constitute a valid increase of the capital stock of a national banking association: First, that the association, in the mode pointed out in its articles and not in excess of the maximum provided for by them, shall assent to an increased amount; second, that the whole amount of the proposed increase shall be paid in as a part of the capital of such association; and, third, that the comptroller of the currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof and certify to the fact of its payment."

This language was used prior to the amended act of May 1, 1886, and would necessarily be somewhat modified now, if treating of the same subject under the provisions of the amended act; but for all the purposes of the argument in question this circumstance is immaterial. The argument is that these three several requirements are expressions of or limitations upon the fundamental power conferred upon the bank to increase stock, and that the failure to comply with either of these requirements, in an attempted increase, renders the consummation void for want of fundamental authority therefor. It must be conceded at the outset that if the sovereign authority never conferred power upon the bank to increase its stock at all there was no valid increase in this case, no valid subscriptions by the defendants to such increase, and no liability on their part by reason of any certificates therefor which they may have received; and in such case no acquiescence, laches, or estoppel on the part of the defendants, as

subscribers to such stock, can work any liability against them. Scovill v. Thayer, 105 U. S. 143; Implement Co. v. Stevenson, 13 C. C. A. 661, 66 Fed. 633. Inquiry must therefore be first made as to whether the requirement that the whole amount of the increase must be paid in relates to the abstract power to increase, or to the performance of that power.

Section 5142, Rev. St. 1878, provides as follows:

"Any association formed under this title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient, subject to the limitations of this title. But the maximum of such increase to be provided in the articles of association shall be determined by the comptroller of the currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the comptroller of the currency, and his certificate obtained specifying the amount of such increase of the capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association."

This section was amended by the act of May 1, 1886 (24 Stat. 18). The first section of this amended act reads as follows:

"That any national banking association may, with the approval of the comptroller of the currency, by the vote of shareholders owning two thirds of the stock of such association, increase its capital stock, in accordance with existing laws, to any sum approved by said comptroller, notwithstanding the limit fixed in its original articles of association and determined by said comptroller; and no increase of the capital stock of any national banking association either within or beyond the limit fixed in its original articles of association shall be made except in the manner herein provided."

In considering the question of "abstract power," it is well at the outset to clearly understand what is meant by the expression. It is said in the case of Bank v. Hawkins, 18 C. C. A. 80, 71 Fed. 370:

"An act is ultra vires a corporation when it is beyond and outside of the scope of the powers conferred by its founders, when the corporation is without authority to perform it under any circumstances or for any purpose."

In other cases it is held, and it is generally so understood, that, if any way is provided by law for accomplishing a desired purpose, power in the abstract may be said to exist for doing it.

The statutory provisions above quoted undoubtedly provide some way for increasing the capital stock of a national banking association, and certainly authorize the increase under certain circumstances and subject to certain requirements. They therefore provide "abstract power," as already defined, for doing the act. The steps to be taken in effecting the increase are enumerated in the acts, but these, with the exception of the approval of the comptroller of the currency, do not in my opinion concern the question of abstract power to do the act, but relate exclusively to the method of performance or the exercise of the power granted. Scovill v. Thayer, supra, was an action to recover an unpaid balance due on subscription to increase stock. According to the laws of Kansas, where the corporation there under consideration was organized, any corporation might increase its stock to any amount not exceeding double its authorized capital. After exhausting this power in making one increase which fully doubled its authorized capital, the corporation attempted, by taking the steps required by law for the lawful increase of stock,

to further increase its capital. The supreme court held that this attempted second increase presented a clear case of want of power in the abstract, which no acquiescence, laches, or estoppel could cure.

Implement Co. v. Stevenson, supra, presents another instance of total want of power to make the increase. An attempt was made here to increase stock of a corporation to an amount in excess of the statutory limit, and the circuit court of appeals followed the doctrine of Scovill v. Thayer, but in the opinion drew a sharp distinction between that case and others involving a defective or informal exercise of the power granted, holding that in the latter case a stockholder may estop himself from denying the validity of the stock or his liability therefor.

Veeder v. Mudgett, 95 N. Y. 295, is a case in which the court of appeals of New York says: "The abstract power [to increase the stock] did exist, and there was a way in which the increase could lawfully be made, and the creditors could without fault believe that the increase had been lawfully effected, and the necessary steps had been taken,"—and holds, notwithstanding failure to comply with certain requirements of the statute relating to increase of capital stock, that the stockholders, by voting for such increase, accepting their proportion of it, and dividends upon it, and by holding it out as a component part of the capital, are estopped from denying the legality of the increase.

In Chubb v. Upton, 95 U. S. 665, it appears that the holders of the original capital stock never authorized the increase, and other such, irregularities occurred as, between the stockholders and the company, might have subjected the increase to annulment by a direct proceeding; yet the court says:

"All this does not alter the fact that there was an attempted alteration of the company, under the form of law, approved by the attorney general, with an increased capital, in the organization and management of which the defendant took part; that he paid his money, received his certificate of stock, attended meetings, voted, acted as an officer, and, so far as the record shows, never repudiated his position at any time, even to the time of the trial. If successful, he would have shared in its profits. He may have been the dupe and victim of the actions of others; he may have been an accomplice; at all events, he was so far an actor in the affair that he cannot escape the consequences of his position."

As a result of a careful examination of all the cases bearing on this question, I am constrained to hold that the statutes of the United States confer the abstract power upon national banking associations to increase their capital to such a limit as might be approved by the comptroller of the currency, and that this power, as such, exists independently of the separate steps required to be taken by the shareholders in the exercise of the power; and that any irregularities, informalities, or defects in the exercise of the general power, like that set up as a defense to this action, may be waived by the subscriber; and that the defendants in this case, by their laches and conduct, have so waived it, and are estopped from availing themselves of the irregularity complained of by them. The demurrer must be sustained.