HECHT, LIEBMANN & CO. v. PHENIX WOOLEN CO. et al.

(Circuit Court, D. Rhode Island. March 21, 1903.)

No. 2,583.

1. CORPORATIONS—STOCKHOLDERS.

Parties who permit the issuance of stock in a corporation to them, acquiesce in it for many years, and do not disavow the acts of the officers in issuing it, are liable as stockholders, even though they paid no consideration for the stock, and the regularity of its issue might be questioned.

In Equity.

Edwards & Angell, for complainant.
Samuel W. K. Allen, for respondents.

BROWN, District Judge. This bill seeks to hold Annie M. S. Dews and Fred S. Dews liable as stockholders for the debts of the Phenix Woolen Company, a corporation of Rhode Island. The case is submitted on bill and answer, and the single question is whether the respondents were stockholders.

The bill alleges in proper form that the said Annie M. S. and Fred S. Dews were stockholders. It seems clear that the facts set up in the answer are insufficient to meet the explicit allegations of the bill, or to show that the respondents were not stockholders. While it is true that a person cannot, without his knowledge or consent, be made a stockholder merely by a record or transfer upon the books of the corporation, or by the issue of a certificate in his name, this does not avail the respondents. They do not set up in their answer, either directly or inferentially, that the stock was issued or transferred to them without their knowledge or consent. Neither do they allege that they did not in any way exercise the rights of stockholders, or that they did not vote or receive dividends upon their stock. On the contrary, the allegations are inconsistent with a lack of knowledge.

The substance of the answer is that at the time of the organization of the Phenix Woolen Company an agreement was made between William A. Walton, its president, and Joseph S. Dews, its treasurer, that Walton should advance about $100,000 for the use of the corporation, and as part security for the payment of his loan should hold as collateral the capital stock of said corporation then issued or to be issued; that about September 30, 1889, certificate No. 1, for 660 shares of the capital stock, was issued in the name of Annie M. S. Dews, and on the same day certificate No. 3, for 66 shares, was issued in the name of Fred S. Dews; that neither said Annie M. S. nor said Fred S. Dews ever paid any consideration therefor, or for any part of it; that both of said certificates of stock were immediately transferred to and held by said Walton as collateral security for his loan to the corporation; that on the same day certificate No. 2, for 330 shares, was issued

¶ 1. Stockholders' liability to creditors in equity, see notes to Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 23 C. C. A. 315; Scott v. Latimer, 33 C. C. A. 23.

to Walton, who, on February 10, 1890, severed his connection with the Phenix Woolen Company, and was paid in full all the obligations he held against said corporation, including said loan, and thereupon Walton transferred and assigned to Annie M. S. Dews his 330 shares of capital stock, and certificate No. 6, for 330 shares, was issued to her on February 11, 1890; that neither Annie M. S. Dews, nor any person for her, paid Walton anything in consideration of said transfer; that afterwards, on November 18, 1892, certificate No. 7, for 321 shares, was issued to Annie M. S. Dews, certificate No. 8, for 21 shares, to Fred S. Dews, and on July 1, 1893, certificate No. 11, for 39 shares, was issued to Annie M. S. Dews, and certificate No. 12, for 3 shares, to Fred S. Dews; that certificates Nos. 7, 8, 11, and 12 were each and all issued as stock dividends by the officers of said corporation, without any vote or other authority of the corporation; that no money or other consideration was ever paid for said stock, or for any part of it; that the said Annie M. S. Dews never had said certificates, nor any of them, in her possession, but was informed by the officers of the corporation that said certificates of stock were held from time to time by the creditors of said corporation as collateral security for its indebtedness. The answer alleges also that the respondents "were informed, and always understood, when said stock was issued, that the same was to be pledged and held by the creditors of said corporation as collateral security for the payment of the indebtedness of the corporation until such time as its earnings should be sufficient to pay the corporation debts, and relieve said stock from all liability therefor."

The answer is inconsistent with the view that the respondents did not have knowledge of what was done, nor consent thereto. Thus the answer alleges that certificates Nos. 1 and 3 were immediately transferred to and held by William A. Walton as collateral security. It would seem to follow from this allegation that the transfer to Walton was made by the respondents to whom the shares had been issued. The answer sets up the transfer. There is no allegation that this transfer was not made by the respondents, or that it was not authorized, or that it was not made with their authority, knowledge, or consent. The answer also alleges that Walton transferred and assigned 330 shares of stock to the respondent Annie M. S. Dews, and that certificate No. 6 for said shares was issued to her in February, 1890. The statement that Annie M. S. Dews never had the certificates, nor any of them, in her possession, is not a sufficient allegation that she was not fully informed that the stock had been issued to her, or transferred to her.

The substance of the case is this: The respondents permitted the issue of stock to them, paying no consideration therefor; and they transferred the same, to be held as collateral security for debts of the corporation. Can they now be permitted to assert against creditors that they were not stockholders, merely for the reason that they paid no consideration for the stock, or because they assented to the transaction merely to assist the corporation in raising funds, or because of any irregularity in the original issue? The case of Keyser v. Hittz, 133 U. S. 138, 149, 10 Sup. Ct. 290, 294, 33 L. Ed. 531, states the law, as follows:

"We must not be understood as saying that the mere transfer of the stocks on the books of the bank to the name of the defendant imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done— nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts, and engagements of the bank. But if, after the transfers, she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified, or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks."

The respondents knew of the issuance of stock to them. They acquiesced in it for many years, and did not disavow the acts of the officers of the corporation in issuing the stock to them. They cannot evade liability by saying that they never paid for their stock, or by questioning the regularity of its issue. Thompson's Liability of Stockholders, § 161; Sigua Iron Co. v. Greene, 31 C. C. A. 477, 88 Fed. 207; Wells v. Larabee, 36 Fed. 866. See, also, note, 23 C. C. A. 330, 331, and cases cited; Latimer v. Bard (C. C.) 76 Fed. 536.

Decree will be for complainants.