G. M. RANDALL, *Plaintiff in Error*, vs. E. L. MICKLE, as
Liquidator of the East Coast Bank and Trust Company,
a corporation organized and existing under the banking
laws of the State of Florida, *Defendant in Error*.

138 So. 14.
141 So. 317.
En Banc.
Opinion filed November 18, 1931.
Petition for rehearing granted January 12, 1932.
Opinion rehearing filed May 3, 1932.

1230

John S. Byington and W. W. Judge, of Orlando, for Plaintiff in Error;

Hull,. Landis and Whitehair, of DeLand, for Defendant in Error.

DAVIS, Commissioner:—An action was brought by E. L. Mickle, as Liquidator of the East Coast Bank and Trust Company, whom we will call the plaintiff, against G. M. Randall, whom we will call the defendant, as an alleged stockholder of the said Bank and Trust Company to enforce the statutory liability of a stockholder.

The defendant filed nine pleas, all of which were either struck by order of the court or were held bad on demurrer. The defendant then filed four amended pleas, two of which were held bad on demurrer and one struck by the court. Defendant was denied the privilege of filing an "additional plea" offered by him. When the case was called for trial the only plea in the record was one alleging that the cause of action did not accrue within three years before suit was brought; but the court then permitted the defendant to file a plea denying that he was the owner of the shares of stock sued upon, and upon these two pleas the case was tried.

The eighth plea, which was stricken from the files, alleged in substance and effect that on June 2, 1926, the East Coast Bank and Trust Company was taken over by the Comptroller of the State of Florida; that on September 7th, 1926, said Bank reopened and attempted to do business until Feb. 16th, 1927, when it closed and ceased to do business as a bank:

"that after the 2nd day of June, 1926, said East Coast Bank and Trust Company through its officers, directors or agents, proposed to increase its capital stock from $50,000.00 to $100,000.00 thereby increasing and creating new stock to the extent of $50,000.00; that as a condition precedent thereto it was necessary that said bank amend its charter and also necessary that the whole of the proposed amount be taken and paid in before the new stock could be created and that said Comptroller approve of said increase and issue his certificate thereof and also certify to the fact of its payment. This defendant says that the shares of stock herein sued upon were a part of the proposed newly created or increased

stock and none other; that the aforesaid conditions precedent to the issuance were not performed or complied with and that said increase of said stock is invalid, null and void; that the conditions of the increase of said stock constituted the consideration moving from the said bank for the subscriptions made for the said stock and that said conditions had not been waived by this defendant, that by reason of the foregoing this defendant says that said increased stock was without consideration and that said consideration has totally and wholly failed; that said bank acquired no authority or power to issue valid stock in compliance with its agreement and undertaking in that behalf so to do; that the aforesaid spurious shares allotted to this defendant were a post mortem increase of stock and hence void and insufficient to cast upon this defendant the position or responsibility of a shareholder in said bank, that defendant has never voted or controlled said shares of stock and has never exercised any act of ownership or dominion over said shares of stock, has never received dividends thereon or anything of value from said stock.''

The proposed ''additional plea'' which the court refused to let the defendant file, alleged that

''prior to the second day of June, 1926, East Coast Bank and Trust Company was a banking corporation organized and existing under the laws of the State of Florida, with a capital stock of $50,000.00, that on said date, to-wit; June 2nd, 1926, said East Coast Bank and Trust Company closed its doors and was taken in charge by the Comptroller of the State of Florida; that after the 2nd day of June, 1926, said East Coast Bank and Trust Company proposed to increase its capital stock from $50,000.00 to $100,000.00; this defendant says that the Charter of said Bank authorized a capital stock of only $50,000.00 and that the stock herein sued upon consisted entirely of the second issue of said stock and was wholly a part of the proposed increased capital stock of said Bank and none other; that the Charter or Articles of Incorporation of said Bank did not authorize said increase of capital stock and that the Charter of said East Coast Bank & Trust Company did not

empower it to issue said increased capital stock and that said shares of stock was and is invalid.''

A verdict and judgment having been entered for the plaintiff, the defendant has brought the case here upon writ of error.

A number of errors have been assigned but defendant in his brief submits that there are but three questions involved, namely;

1. Has a Florida banking corporation the power to increase and issue capital stock in excess of the amount named in its charter (which charter does not provide for such increase) without amending its charter and without securing the approval of the Comptroller as the representative of the people?

2. Is a subscriber to a proposed increase of stock in a bank, estopped upon insolvency of the bank to set up lack of power to issue increased stock?

3. Did the Court below err in excluding from evidence the certified copy of the charter of the East Coast Bank and Trust Company with all amendments thereto, which certificate bore the great seal of the State of Florida?

On the other hand the plaintiff submits:

That when the Bank undertook to increase its capital stock and the defendant subscribed for a portion thereof and received a certificate therefor, and permitted his name to be entered in the stock book of the bank, he held himself out as a stockholder of the Bank while it enjoyed the patronage of the public for a period of six (6) months under the representation that it was capitalized to the extent of the proposed increase, when it was judged insolvent and was taken in charge by the State Comptroller, and that the defendant is now estopped from pleading that the bank failed to perfect an amendment of its charter authorizing such increase of its capital and failed to procure certificate of the Comptroller certifying the amount of such increase, with the Comptroller's approval thereof,

in an endeavor to repudiate and escape liability from assessment of his stock.

The motion to strike a pleading admits the truth of all facts well pleaded for the purposes of the motion, and any inferences fairly deducible therefrom. Holgate vs. Jones, 94 Fla. 198, 113 So. 714; Braddy, etc., Fishery Co. vs. Thomas, 93 Fla. 326, 112 So. 55, 49 C. J. 686.

While much must necessarily be left to the judicial discretion of the trial judge in permitting additional or new pleas to be filed by a defendant, after pleas already filed by him have been adjudged to be defective or insufficient, that discretion should be wisely exercised. Franklin Phosphate Co. vs. International Harvester Co. of America, 62 Fla. 185, 57 So. 206; Ann. Cas. 1913, C. 1247.

It has been uniformly held here that striking a pleading is a severe remedy and should be resorted to only in cases palpably requiring it for the proper administration of justice (Ray vs. Williams, 55 Fla. 723, 46 So. 158; Southern Home Insurance Co. vs. Putual, 57 Fla. 199, 49 So. 922; Guggenheimer & Co. vs. Davidson, 62 Fla. 490, 56 So. 801; Burr vs. Hull, 66 Fla. 20, 63 So. 300) and that a plea must be wholly irrelevant to authorize striking thereof. McIver vs. Croom, 60 Fla. 123, 53 So. 545; St. Petersburg Novelty Works vs. Battle, 66 Fla. 303, 63 So. 445; So. Turpentine Co. vs. Douglass, 61 Fla. 424, 54 So. 385.

Can it be said that the stricken plea which we have set out in effect and the "additional plea" which the court refused to permit the defendant to file, are so wholly devoid of merit that the action of the court in striking one and refusing to allow the other to be filed was proper? The stricken plea does not specifically allege that the articles of incorporation of said Bank made no provision for an increase of its capital; but we think such fact may be implied from the allegation that "as a condition precedent thereto (increasing its capital) it was necessary that

said Bank amend its charter", and that it was admitted by the motion to strike, as was also the allegation that the shares of stock held by the defendant were a part of the proposed newly created or increased stock of $50,000.00.

The defendant insists that he should not be held liable unless the bank's charter was amended and the approval of the Comptroller was secured as the law requires, and that the court erred in striking the plea which sought to set up such facts and also erred in denying defendant's application to file the "additional plea."

As a general rule, a corporation can have and exercise only such powers as are expressly conferred on it by the act of incorporation, and such implied powers as are necessary to enable it to perform its prescribed duties (Scovill vs. Thayer, 105 U. S. 143, 26 L. Ed. 968; Fertilizer Co. vs. Hyde Park, 97 U. S. 659, 26 L. ed. 1036) and it has no implied power to change the amount of its capital as prescribed in its charter, and all attempts to do so are void. Scoville vs. Thayer, *supra;* Chicago City R. Co. vs. Allerton, 18 Wall. 233, 21 L. ed. 902.

The East Coast Bank and Trust Company was organized under the banking laws of the State of Florida, which, with its articles of incorporation, constituted its charter. Scovill vs. Thayer, *supra;* Bryan vs. St. Andrews Bay Community Hotel Corporation, 99 Fla. 132, 126 So. 142.

Sec. 6069 (4138) Compiled General Laws of Florida, 1927, reads as follows:

"Any banking company formed under this Chapter may by its charter provide for an increase of its capital from time to time, as may be deemed expedient, subject to law; but the maximum of such increase to be provided in the charter shall be determined by the Comptroller, and no increase of capital stock shall be valid until the whole amount of such increase is paid in and notice thereof has been transmitted to the Comptroller and his certificate obtained specifying the amount of such increase of capital stock, with his approval there-

of, and that it has been duly paid in as a part of the capital of such company. No reduction of capital stock shall be made below the minimum.''

Our statute also provides that,

''The proposed charter of an intended corporation * * * * * * shall set forth: * * * * * * * * *

''3. The amount of the capital stock authorized, the number and par value of the shares into which it is divided and, the terms and conditions upon which it is to be paid in.'' Sec. 5979 (4050) Compiled General Laws of Florida, 1927.

Section 6014 (4085) Compiled General Laws, 1927, authorizes any corporation to increase its capital stock to any amount by pursuing the course therein prescribed, while Sec. 6016 makes provision for the amendment of corporate charters,· and further provides the method for making amendments effective.

At the time the East Coast Bank and Trust Company attempted to increase its capital, there was nothing in the banking act or the general corporation law of this State that made it imperative for the charter of a proposed State Bank to fix a maximum amount to which its capital might be increased, and section 6069 (4138) Compiled General Laws, as we see it, creates an exception to, and makes inapplicable Section 6014 (4085) Compiled Gen. Laws to Banking Corporation. In the Federal law relating to National Banks, there is a provision (Sec. 5142 Rev. S. U. S., 12 U. S. C. A. Sec. 57) similar to Section 6069 (4138) Com. Gen. Laws, and in an opinion by the Attorney General of the United States (17 Op. Atty.-Gen. 288) it was held that prior to the passage of the act, May 1, 1886, (Sec. 2, Chap. 2, Gvt. 12 Code of Laws of United States, 12 U. S. C. A. 58), where articles of association provide for an increase of capital and the maximum of such increase is once fixed by the determination of the Comptroller, both his power and that of the association over

the subject are exhausted and a further increase could only be effected by the amendment of the articles.

The said provision of the said Act of May 1, 1886, reads as follows:

"That any national banking association may, with the approval of the Comptroller of the Currency, by the vote of shareholders owning two-thirds of the stock of such association, increase its capital stock, in accordance with existing laws, to any sum approved by the said Comptroller, notwithstanding the limit fixed in its original articles of association and determined by said Comptroller; and no increase of the capital stock of any national banking association either within or beyond the limit fixed in its original articles of association shall be made except in the manner herein provided." (12 U. S. C. A. 858).

As we have seen, our statute provides for the amendment of corporate charters, but under Sections 6016 (4087) and 6069, Compiled General Laws, for a proposed amendment increasing the capital of a banking corporation to become a part of the charter sought to be amended it must have been adopted by a vote of three-fourths of all of the stock of the corporation, at a meeting held for that purpose, and called and notified by published notice for four weeks prior thereto in a newspaper published in the county and the usual notice for stockholders meetings must be served and mailed, and then it can not be deemed and taken a part of the charter unless the corporation gave not less than five days notice of its intention to apply to the Governor for the amendment by at least one publication in some newspaper published in the county where its principal place of business is located setting forth the desired amendment, and there must have been on file in the office of the secretary of State during the time of such publication, a certificate, under the common seal of the corporation, of the proposed amendment so adopted, and the approval of the Governor must have been obtained as

well as the issuance of letters patent reciting the amendment, which letters patent must have been recorded as provided by the statute. In this case, if the charter was not lawfully amended so as to permit an increase of the capital of the bank under the statute, the corporation was prohibited by implication from issuing stock in excess of the maximum of increase provided for in the articles of incorporation, and inasmuch as the charter does not provide for such increase, and there has been no amendment thereto authorizing an increase, any attempt on the part of the corporation to increase the stock in excess of the authorized capital was *ultra vires*, and the stock so issued was void. "To decide that the holders of stock issued *ultra vires* have the same rights as the holders of authorized stock is to ignore and override the limitations and prohibitions of the charter. We think it follows, that if the holder of such spurious stock has none of the rights, he cannot be subjected to the liabilities of the holder of genuine stock." Scoville vs. Thayer, *supra.*

But it is insisted here that when the East Coast Bank and Trust Co., undertook to increase its capital stock and the appellant subscribed for a portion of the proposed increase of stock, received a certificate therefor, and permitted his name to be entered in the stock books of the bank, he held himself out to the public as a stockholder in said bank while it enjoyed the patronage of the public for a period of over six months, under the representation that it was capitalized to the extent of such proposed increase, he is now estopped from pleading that the bank failed to perfect an amendment of its charter authorizing such increase of its capital and failed to procure the necessary certificate of the Comptroller, in an endeavor to escape his liability for an assessment against him and his stock. And, we are reminded by plaintiff that Section 6069 of Compiled General Laws was enacted primarily for the benefit of the public and those expected to become creditors

of the bank; that the defendant was charged with knowledge of its provisions; that the stock had been issued to him and that he had allowed his name to appear upon the records of the bank, and to be held out to the public as a stockholder, and that he should take the consequences of the position he assumed.

The case of Latemar vs. Bard, 76 Fed. 536, cited by plaintiff is not in point. In that case, suit was brought to enforce an assessment against stock under the statute. The stockholders of the bank voted by the necessary majority for an increase of the capital, and the Comptroller of the Currency of the United States had certified that the bank had increased its capital with his approval. The effort to enforce the assessment was resisted upon the ground, among others, that one-third of the amount of such increased stock was subscribed for by officers of the bank who subsequently issued certificates to themselves therefor, without paying anything for the same, and that this was accomplished by fictitious and false entries entered in the bank books and records which were explained in detail in the answer. The court held that the Comptroller occupied a position quasi judicial in its character and that his finding and certificate of the fact in question was an exercise of the judicial function and ought not to be disturbed except upon some appropriate direct proceeding to that end; but, it appears that it was "further argued by defendants' counsel that the entire increase of stock in question was ab initio void, and hence that no question of estoppel can arise against the defendants in this case. They say it was ultra vires and void because one of the essential and statutory requirements was not complied with namely, the whole amount of the increase was not paid in. They contend that the paying in of the whole amount of the increase was a fundamental prerequisite to a lawful and valid increase, and that the failure so to have done, as pleaded by defendants renders the increase absolutely

void.'' The court in its opinion then proceeds as follows:

"Notwithstanding the views already expressed concerning the conclusiveness of the comptroller's certificate, I will briefly consider this view of the case.

Counsel rely mainly on the cases of Winters v. Armstrong, 37 Fed. 508, and Delano v. Butler, 118 U. S. 634, 7 Sup. Ct. 44, in the last of which the supreme court says:

'It appears that three things must concur to constitute a valid increase of the capital stock of a national banking association: First, that the association, in the mode pointed out in its articles and not in excess of the maximum provided for by them, shall assent to an increased amount; second, that the whole amount of the proposed increase shall be paid in as a part of the capital of such association; and, third, that the comptroller of the currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof and certify to the fact of its payment.'

This language was used prior to the amended act of May 1, 1886, and would necessarily be somewhat modified now, if treating of the same subject under the provisions of the amended act; but for all the purposes of the argument in question this circumstance is immaterial. The argument is that these three several requirements are expressions of or limitations upon the fundamental power conferred upon the bank to increase stock and that the failure to comply with either of these requirements, in an attempted increase, renders the consummation void for want of fundamental authority therefor. *It must be conceded at the outset that if the sovereign authority never conferred power upon the bank to increase its stock at all there was no valid increase in this case, no valid subscriptions by the defendants to such increase, and no liability on their part by reason of any certificates therefor which they may have received;* and in such case no acquiescence, laches, or estoppel on the part of the defendants, as subscribers to such stock, can work any liability against them. Scovill v. Thayer, 105 U. S. 143; Implement Co. v. Stevenson, 13 C. C. A. 661, 66 Fed. 633. Inquiry must therefore be first made as to whether the requirement that the whole amount of the increase must be paid in

relates to the abstract power to increase, or to the performance of that power.

Section 5142, Rev. St. 1878, provides as follows:

'Any association formed under this title may, by its articles of association, provide for an increase of its capital from time to time, as may be deemed expedient, subject to the limitations of this title. But the maximum of such increase to be provided in the articles of association shall be determined by the comptroller of the currency; and no increase of capital shall be valid until the whole amount of such increase is paid in, and notice thereof has been transmitted to the comptroller of the currency, and his certificate obtained specifying the amount of such increase of the capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such association.'

This Section was amended by the act of May 1, 1886, (24 Stat. 18). The first section of this amended act reads as follows:

'That any national banking association may, with the approval of the comptroller of the currency, by the vote of shareholders owning two thirds of the stock of such association, increase its capital stock, in accordance with existing laws, to any sum approved by said comptroller; notwithstanding the limit fixed in its original articles of association and determined by said comptroller; and no increase of the capital stock of any national banking association either within or beyond the limit fixed in its original articles of association shall be made except in the manner herein provided.''

In considering the question of 'abstract power,' it is well at the outset to clearly understand what is meant by the expression. It is said in the case of Bank v. Hawkins, 18 C. C. A. 80, 71 Fed. 370:

'An act is ultra vires a corporation when it is beyond and outside of the scope of the powers conferred by its founders, when the corporation is without authority to perform it under any circumstances or for any purpose.'

In other cases it is held, and it is generally so understood, that, if any way is provided by law for accomplishing a desired purpose, power in the abstract may be said to exist for doing it.

*The statutory provisions above quoted* undoubtedly provide some way for increasing the capital stock of a national banking association, and *certainly authorize the increase under certain circumstances* and subject to certain requirements. *They* therefore, *provide 'abstract power'*, as already defined, for doing the act. The steps to be taken in effecting the increase are enumerated in the acts, but these, with the exception of the approval of the comptroller of the currency, do not in my opinion concern the question of abstract power to do the act, but relate exclusively to the method of performance or the exercise of the power granted. Scovill vs. Thayer, supra, was an action to recover an unpaid balance due on subscription to increase stock. According to the laws of Kansas, where the corporation there under consideration was organized, any corporation might increase its stock to any amount not exceeding double its authorized capital. After exhausting this power in making one increase which fully doubled its authorized capital, the corporation attempted by taking the steps required by law for the lawful increase of stock, to further increase its capital. The supreme court held that this attempted second increase presented a clear case of want of power in the abstract, which no acquiescence, laches, or estoppel could cure.

Implement Co. vs. Stevenson, supra, presents another instance of total want of power to make the increase. An attempt was made here to increase stock of a corporation to an amount in excess of the statutory limit, and the circuit court of appeals followed the doctrine of Scovill v. Thayer, but in the opinion drew a sharp distinction between that case and others involving a defective or informal exercise of the power granted, holding that in the latter case a stockholder may estop himself from denying the validity of the stock or his liability therefor." (Italics supplied).

The conclusion of the court was, that the *statutes* of the United States *conferred* the *abstract power* upon national banking associations to increase their capital to such a limit as might be approved by the comptroller of the currency, and that this power, as such, exists independently

of the separate steps required to be taken by the share-holders in the exercise of the power. The case was disposed of on the theory that the matters set up in defense of the action were irregularities or informalities, in the exercise of the general power which the bank had under the quoted statutes, which may be and was waived by the defendant.

In the case of Scovill vs. Thayer, which we have heretofore cited in this opinion, a contention was made similar to the contention of the plaintiff and there the Court said:

"We think the defendant in error is not estopped to set up the nullity of the unauthorized stock. It is true that it has been held by this court that a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create. Upton vs. Tribilcock, 91 U. S. 45 (XXIII., 203); Chubb vs. Upton, 95 U. S. 665 (XXIV., 523); Pullman v. Upton, 96 U. S., 328 (XXIV., 818). But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the Corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant.

But here, the Corporation being absolutely without power to increase its stock above a certain limit, no acquiescence of the shareholder can give it validity or bind him or the Corporation. 'A distinction must be made between shares which the Company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which they have been issued. The holders of shares which the Company has no power to issue, in truth had nothing at all and are not contributors.'"

And it was held that the holder of the spurious stock was not estopped by any acts of his, to assert the invalidity of the stock issued in excess of the limit authorized by the charter, and to deny his liability thereon, and that if he was not estopped by his own act, he was not by the acts

of the corporation in representing to the public that the capital of the bank had been increased.

The Court said further:

"The officers of the Company had no authority to make these representations, and the public no right to trust them. Persons dealing with the managers of a corporation must take notice of the limitations imposed upon their authority by the Act of incorporation. Zabriskie v. R. R. Co., ubi supra. The laws secured to the public and the creditors an infallible mode of ascertaining the real capital of the Company. They were bound to know that the law permitted no such increase of its capital stock as the Company had attempted to make, and that any representation that it had been made was false.

As forcibly suggested by counsel for defendant in error, if any creditor has been defrauded by misrepresentation of the real capital of the Company, he has his remedy in an action of tort against all who participated in the fraud."

When it comes to the facts pleaded, the case of Scovill vs. Thayer is not on all fours with this case, but they are so nearly analogous that the principles of law there discussed and decided are applicable to the case at bar.

There is no conflict between the cases of Latemar vs. Bard, *supra,* and Scovill vs. Thayer, *supra,* because as we have seen, the Federal Statutes conferred upon national banks *abstract* power to increase their capital. The reasoning of the court in Scovill vs. Thayer appeals to us as being sound. See also, Cartwright vs. Dickinson (Tenn.) 7 L. R. A. 706; Winters vs. Armstrong, 37 Fed. 508, 518-21; Laredo Imp. Co. vs. Stevenson, 66 Fed. 633; Ross-Mehan Brake Shoe F. Co. vs. Southern Malleable Iron Co., 72 Fed. 957.

Undoubtedly the rule is, when an action is brought by the representative of an insolvent bank to enforce the statutory liability of its stockholders, that those who have subscribed for an increase of stock *within the power* of the

corporation to make, who have received and accepted certificates of stock issued to them and permitted the corporation to hold them out as stockholders, will not be heard to defeat an action on the ground that the stock was increased in an irregular or unlawful manner. Commissioner of Banks vs. Cosmopolitan Trust Co., (Mass.) 148 N. E. 609, 41 A. L. R. 658. Bailey vs. Tillinghast, 99 Fed. 801. In discussing this rule, the Massachusetts court in the case of Commissioner of Banks vs. Cosmopolitan Trust Co., said:

> "Strong reasons of policy support this rule. The public must depend to a large extent upon the confidence in the integrity of management and the financial soundness of banks and trust companies resting upon true capital stock. Those who avowedly assume the relation of stockholders to such institutions in a sense stand sponsor for it. Public confidence in such institutions ought not to be shaken by relieving apparent stockholders from their ostensible liability, established by the law for the benefit of creditors, for any except the most potent and convincing reasons."

On the other hand, an apparent stockholder in an insolvent bank should not be estopped from asserting the invalidity of a contract for stock that is without support in law, because the corporation is without power to increase its capital even though by conduct he has apparently placed himself, by contract and acquiescence, in the position of a stockholder.

Inasmuch as we may have no provision in our law similar to the said Act of May 1, 1886, giving abstract power to national banks to increase their stock and an increase of capital was not provided for in the articles of incorporation of the East Coast Bank and Trust Company, and no amendment thereto authorizing an increase had been voted for by the stockholders, certified to and approved by the Governor, as the statute requires, the corporation was without abstract or other power to increase its capital, or to

issue stock representing a supposed increase of capital. There could be no such power without the consent of the State, or its authorized agent. Since the corporation had no power to increase its capital, the plaintiff in error was not a stockholder in fact, against whom the statutory liability will attach, and in consequence thereof, the principle of estoppel does not apply as to him.

It follows that the eighth plea that was stricken from the files was not wholly irrelevant and should not have been stricken. If it was not sufficiently explicit, a motion for compulsory amendment was in order.

It was specifically alleged in the "additional plea" that the charter of the Bank authorized a capital stock of *only* $50,000.00 and that the stock sued upon consisted entirely of the second issue and was wholly a part of the proposed increased capital stock, and that the Charter or articles of incorporation of said bank did not authorize said increase of capital stock. In denying the motion for leave to file such additional plea, the court committed error.

Upon a new trial it is not probable that the same ruling of the Court will be made upon a tender in evidence of the articles of incorporation and for that reason, we will not prolong this opinion by discussing the propriety of the court's ruling rejecting it as evidence at the trial.

The judgment is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

Per Curiam.—The record in this case having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the court as its opinion, it is considered and ordered by the court that the judgment of the Court below, be, and the same is hereby, reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

Buford, C.J., and Whitfield, Ellis, Terrell, Brown and Davis, J.J., concur.

### On Rehearing.

Per Curiam.—The original opinion in this case dealt only with the sufficiency of defendant's pleas. The question there presented was whether or not the defendant was estopped by the mere fact of issuance and acceptance of void bank stock from pleading as a defense that the issuance of defendant's bank stock was *ultra vires,* and that therefore the statutory liability thereon was unenforceable. In that opinion the Court held that *per se* no such estoppel obtained. See foregoing original opinion, Randall v. Mickle, also reported in 138 Sou. Rep. 14.

But as regards the rights of creditors, and the rights of the liquidator representing the creditors, to properly show an estoppel against the stockholder to preclude him from asserting the invalidity of the stock issue to avoid double liability on the stock, a different question arises.

Creditors of a bank ordinarily rely upon the bank's *apparent* capital stock, irrespective of the mode of its issuance. Therefore negligence in accepting invalid stock, laches in failing to avoid a subscription for it, acceptance of benefits under it, and the intervening rights of innocent third parties who rely upon the apparent capital stock, may under particular circumstances, to be pleaded and established by proof, be sufficient to estop the subscriber or stockholder from asserting the invalidity of the issue to avoid double liability, when sued by the statutory liquidator representing the bank's creditors.

Nothing said in the original opinion should be construed as having foreclosed the liquidator in the instant case from so framing his pleadings as to present a showing of estoppel of this kind on the part of the defendant subscriber or stockholder, who would otherwise have the right to rely on and plead as a valid defense the *ultra vires* issue of the stock held by him and upon which the suit against him is based.

Section 4128 R. G. S., 6059 C. G. L. (now amended by Section 3, Chapter 13576, Acts of 1929) provides:

"Stockholders of every banking company shall be held individually responsible equally and ratably and not for one another for all contracts, debts and engagements of such company to the extent of the amount of their stock therein at the par value thereof in addition to the amount invested in such shares. Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liability as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in trust funds would be, if living and competent to hold the stock in his own name."

Under this section it has been held that the stockholder's liability with respect to the bank's obligations is primarily *contractual* (Tunnicliffe v. Noyes, 101 Fla. 794, 135 Sou. Rep. 505), while assessment of bank stock to make good impairment of capital subserves an entirely different purpose from that intended to be subserved by the double liability of stockholders. Russ v. Golson, 102 Fla. 865, 136 Sou. Rep. 506. In the last case cited, it was distinctly held that double liability of stockholders is *individual* liability which does not arise, except in case of liquidation, when it is then enforced for benefit of the bank's creditors.

Construing our double liability statute in the light of its intended purpose, we see no good reason why the double liability thereby created for the benefit of creditors of banks, which liability this Court has specifically held to be contractual in its nature (Tunnicliffe v. Noyes, supra), may not upon the principles of estoppel, when such principles are properly invoked and pleaded, be visited upon *ostensible* stockholders.

The interests of the public which depend upon the business of banking and its lawful conduct, the rights and relations of private citizens who deal with banks and which become vested in reliance upon the apparent compliance

by the banks with the provisions of the banking laws, the intolerable injustice and confusion which must inevitably result from *ex post facto* avoidance of liabilities apparently assumed and outstanding for the protection of a bank's creditors, commend the justice, and demand the enforcement of the rule, that when a bank stockholder has assumed, under color of authority and has accepted benefits from, or exercised for any considerable time, without objection by the officers of the State, the status of a stockholder of the kind recognized by statutory and organic law, neither the bank nor such stockholder can, in litigation with the bank's creditors or their legal representative, question the legality of the status of those who appeared to be stockholders, as against the intervening rights of third parties who relied upon the apparent status which seemed to exist.

The same conclusion has been reached on rehearing that was reached on the hearing first had, but any views expressed in the original opinion which may appear to be in conflict with the views here expressed, are modified to conform to this opinion on rehearing, but the first opinion is otherwise adhered to.

Judgment of reversal re-instated on rehearing, and cause remanded for further proceedings not inconsistent with this opinion or the original opinion as hereby supplemented and modified.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, AND. DAVIS, J.J., concur.

BROWN, J., dissents.

BROWN, J., (dissenting) :—On the question of estoppel, I see no good reason for the court to depart from its original opinion, written by Commissioner Davis, which was unanimously adopted as the opinion of the Court on the former hearing. In this, and in all other respects, I think the original opinion was eminently sound. Nothing has been

advanced on the rehearing which to my mind shakes in the slightest the logic or the justice of the position the court has already taken. I must, therefore, respectfully dissent from any retreat from or modification of the conclusion heretofore reached.