J. H. THERRELL, *Liquidator, Bank of Bay Biscayne,* v. MARIE McD. REILLY.

151 So. 305.
Division B.
Decision Filed December 5, 1932.
Opinion on Rehearing Filed September 18, 1933.
Second Rehearing Denied December 18, 1933.

806

*Redfearn & Ferrell,* for Plaintiff in Error;

*Twyman & McCarthy,* for Defendant in Error.

DAVIS, J.—In a suit at law brought to collect a bank stock asessment, the defendant filed a plea to the declaration setting up that the bank, being incorporated under the laws of Florida, the charter limited the amount of capital stock to a sum not exceeding $100,000.00 and that in violation of the laws of the State, the bank had undertaken to increase, and had increased, its total capital stock above the charter limit, without amending its charter, and that the stock upon which the suit had been brought was stock which

had been issued by the bank in excess and in violation of its charter limitation, and without compliance with the law, by reason of which fact it was *ultra vires* and void, and did not authorize the assessment sued on.

The replication to the plea setting up that defendant was estopped to interpose such defense, went out on demurrer. The writ of error is taken from the final judgment entered in defendant's favor on the plea of *ultra vires*.

Briefly summarized, the replication which was held bad, alleged that while the stock of defendant had been issued by the bank in excess of the amount limited by its charter, and had been issued without an amendment to the charter of the bank authorizing the increase in the bank's capital stock, nevertheless, defendant was estopped to plead that fact in defense of a bank stock assessment made against her under Section 6059 C. G. L., 4128 R. G. S., because the bank had done all the acts necessary to validly issue such increased amount of stock, including the authorization thereof by a two-thirds vote of the stockholders and certification of that fact to the Secretary of State, and had only failed to comply with the law in the single particular of not amending its charter, though holding itself out to the public and enjoying the public patronage of a banking institution having the amount of capital stock of $1,000,000.00 instead of $100,000.00.

The plea also alleged additional facts tending to show that the defendant should not be allowed to prevail under her plea, because she had assumed, under color of authority, without objection of any officer of the State, the status of a bank stockholder of the kind recognized by statutory and organic law in the State of Florida, in which capacity she had participated in the affairs of the bank as if a legal stockholder thereof, as well as had accepted benefits from

said stock and dividends paid by the bank thereon, by reason
of all of which it was alleged that she should be held
estopped in law to deny her status as a stockholder in so far
as the rights of the liquidator, after insolvency, acting for
the benefit of creditors was concerned, in suing to recover
an authorized stock assessment levied by the Comptroller
against all stockholders of the defunct Bank of Bay Bis-
cayne.

We might well reserve the judgment on the authority
of what was said by us in our recent case of Randall v.
Mickle, 103 Fla. 1229, 138 So. 14, 141 Sou. Rep. 317, con-
cerning the exact proposition on which the propriety of the
replication in this case ought to have been upheld by the
court below.

In the case just cited, this Court said in disposing of a
petition for rehearing filed in that case after its original
disposition as reported in 138 Sou. Rep. at page 14:

"Bank stockholders, who, under color of authority, have
accepted benefits from or exercised status of stockholder
for considerable time without objection, are estopped to
question legality of issuance of stock, to avoid double lia-
bility, as against intervening rights of third persons who
relied on apparent status of stockholders (Comp. Gen.
Laws 1927, Sec. 6059)."

What was said in that case was not mere *obita dicta,* be-
cause it was necessary for us to say what we did in order
to dispose of the petition for rehearing which had been
filed. See Parsons v. Federal Realty Corp., 105 Fla. 105,
143 Sou. Rep. 912, eleventh headnote.

But be that as it may, the previous opinion in Randall
v. Mickle, *supra,* is a recent one, and the question involved
is of such far reaching importance, that we have re-
examined the entire subject in the light of the oral argu-

ments made, and the briefs filed in this case, thereby treating the point as one still open for primary consideration. We do so in order to avoid the evil consequence suggested by counsel for defendant in error that for us to blindly adhere to an erroneous rule, merely because it has been declared in recent earlier decision, tends to enshrine and perpetrate the dead error of yesterday so that it may become the living law of today. See Ellison v. Georgia R. R. Co., 87 Ga. 691, 13 S. E. 809, where an interesting discussion of the maxim, *"Feat justitia ruat caelum,"* will be found.

Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented, parties to the declaration will not, in the interest of justice, be heard to deny. And it has always been held in the case of both public and private corporations that when a corporation has the lawful authority to do an act* on the condition that certain facts exist, or with the understanding that certain acts have been done, and the law entrusts the power to, and imposes the duty upon, its officers to ascertain, determine and represent the existence of such facts upon which the public is entitled to rely in its dealings with the corporation, the representation of the acts will estop the corporation and its privies, as against those dealing with it *bona fide* on the faith of the fact purporting to exist, from proving its falsity to defeat a claim of liability based upon the assumption that the representation is true. See Note 11, Eng. Rul. Cas. Law 67; 10 R. C. L. page 704, *et seq.*

When a corporation is acting within the general scope of

---

*In this case the statutes authorized the bank to increase its capital stock by complying with certain requirements, and following certain steps by way of procedure for doing it.

the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied *with the legal formalities,* which are prerequisite to its existence or to its action, because such prerequisites *might in fact have been complied with.* Central Transportation Co. v. Pullman Palace Car Co., 139 U. S. 24, 11 Sup Ct. 478 (488), 35 L. Ed. 55.

On the same principle, when a bank has been once duly and legally chartered under the law, and there exists on the books a provision in the statutes under which such bank can, by complying with certain legal formalities, increase its capital stock by voting for such increase and by amending its charter, so as to show the amount of the increase, persons who have become record holders of shares of stock actually issued by such bank, and who have participated in its affairs and drawn benefits from it in the form of dividends and other distributions or payments of value, so received by them in the status of a stockholder, will, as to creditors and depositors in case of insolvency of the bank, become estopped to deny that the bank had complied with the legal formailties, which were prerequisite to a valid increase in the amount of capital stock because as to the general public, uninformed to the contrary, such prerequisites as are required by the statute to effect an increase in the amount of capital stock, might in fact have been complied with.

In this connection it is pertinent to call attention to the fact that there is no law in this State which prohibits a bank to be capitalized to an amount of one million dollars, nor does any statutory provision forbid the doing by a bank of exactly what was done by the Bank of Bay Biscayne in regard to increasing its capital stock in the way and to the amount it did, had the formalities of the law for doing it

been complied with. Every formality is shown to have been complied with, except the bare circumstance of amending the charter by observing a certain course of procedure required to be followed in order to make the amendment showing an increase in capital stock legal.

Section 6060 C. G. L., 4129 R. G. S., makes the stockholders of a bank liable for all the bank's debts, as if they were members of a general partnership and not stockholders of a corporation, if a bank transacts business until it has been first duly authorized by the proper State officers so to do. To hold that a transaction by a bank or business done by it while it holds itself out as being supported by more capital stock than was technically authorized by legal formality, imposes no liability whatsoever on ostensible stockholders who participate in and enjoy the benefits of a stockholder *ea nomine,* would be an incongruous anomaly that would fritter away the protection of the enactment of the stockholders' added liability was intended to afford, in cases of insolvency.

Section 6092 C. G. L., 4155 R. G. S., provides for the publication of bank statements which of necessity would be required to show, and which the Court judicially knows do, in every instance, show, the amount of outstanding capital stock liability the bank has, based upon the number of shares that have been issued by it. The publication of such information is required for the benefit of the public. When published, the public has the right to rely upon the published statement as to the amount of stock outstanding, being true as published. And those who acquire stock in a bank, enjoy its benefits, and permit the bank to be held out in such published statements, as having stock of a represented total amount, have little standing in a court of justice to be heard to aver the contrary, after the bank has

become insolvent and they have been sued to compel them to respond to the liability of a real stockholder.

We do not understand the Federal cases and cases from other jurisdictions which have been cited to this Court in the able brief of counsel for defendant in error, as really holding contrary to the true principle of the rule we have just stated. Properly construed, the cited cases will be found to deal with a different situation from that which this case presents.

But if it must be conceded that their holdings are in truth and in fact directly contrary to our own as made in this case, we regard such holdings as unsound, and refuse to follow them to the extent of perpetuating in this jurisdiction the error of a rule so unjust and so detrimental to the public welfare, as to declare that a bank stockholder can do what no other wrongdoer is in law permitted to do, that is, retain the benefits of an illegal action to which he is a party, and at the same time repudiate and escape from a concomitant contractual liability arising out of the same ostensible status that made possible the realization by him of a stockholder's benefits.

The demurrer to the replication to the defendant's plea was erroneously sustained in view of what we have heretofore said in Randall v. Mickle, 103 Fla. 1229, 138 So. 14, 141 Sou. Rep. 317, which opinion we now follow and reaffirm, for reason herein discussed.

Reversed and remanded.

WHITFIELD, P. J., and TERRELL, J., concur.

BUFORD, C. J., concurs in the opinion and judgment.

## ON REHEARING.

HARRISON, Circuit Judge.—The principle that an estoppel does not operate to confer authority, though it may, under

some circumstances, be effective to preclude denial that authority conferred was duly exercised, is well settled law in this State, and we are, therefore, not required to investigate authorities from other jurisdictions to sustain the point.

In the case of State *ex rel.* Nuveen v. Greer, *et al.,* 102 Southern 739, text 744, will be found the following:

"(12)   While a municipality may be estopped to deny that the authority to issue bonds given by a valid statute was not properly exercised, in issuing bonds to *bona fide* holders for full value (County of Jefferson v. B. C. Lewis & Sons, 20 Fla. 980), yet a municipality will not be estopped from denying the validity of a statute under which bonds were issued, even to *bona fide* holders.   See L. R. A. 1915A, 916 notes;" and also

"(13)   A municipality can exercise only such powers as are conferred by law, and where a legislative enactment purports to confer on a municipality authority to issue bonds, and such authority is in conflict with express or implied provisions of the Constitution, the enactment confers no authority, and bonds issued thereunder are void even in the hands of *bona fide* holders, and the municipality is not estopped to deny the validity of the bonds.   19 R. C. L. 1006."

This Court further held in the case of Merrell v. The City of St. Petersburg, decided October 23rd, 1917, reported in 76 Sou. Rep. 699, text 700:

"(1)   It is averred in the answer that said City undertook to secure a new charter under the provisions of Chapter 6940, Acts of 1915, Laws of Florida, but that such undertaking was never completed, and such new charter never became effective because no copy of the proposed charter was recorded in the office of the clerk of the circuit court,

as required by Section 13 of said statute. In a stipulation filed by counsel for the respective parties in the court below, the following paragraph on this subject appears:

" 'It is further stipulated and agreed that said charter was duly recorded in the office of the Secretary of State, February 26, 1916, in Book 1 of "Municipal Charters" and that said Charter was recorded in "Corporation Record No. 1" on page 263 to 285, inclusive, in the office of the Clerk of the Circuit Court of Pinellas County, Fla., but not in any other book in said office.'

"Even if this does not show a full compliance with the terms of the statute, which is not conceded, the holding of the court below was right, for the reason that the question of whether or not there was irregularity in the organization of the municipality cannot be determined in a collateral attack of this character. Town of Enterprise v. State, 29 Fla. 128, 10 So. 740."

As set forth in the original opinion in this case, the plea filed by the defendant set forth that the charter of the Bank of Bay Biscayne limited the amount of capital stock to a sum not exceeding one hundred thousand dollars, and that in violation of the laws of the State the bank had undertaken to increase its capital stock above the charter limit, without amending its charter, and that the stock upon which the suit had been brought was stock issued by the bank in excess and in violation of its charter limitation and without compliance with the law and that the same was *ultra vires* and void. While it is insisted now that the bank was powerless to increase or to have increased its capital stock, yet the plea complains of the conduct of the bank by reason of the fact that its charter was not amended.

This Court held in both the original decision and in the decision on rehearing in Randall v. Mickle, 138 So. 14 and

141 So. 317, that authority does not exist for the increasing of the capital stock of a bank. It again is made unnecessary to refer to authorities from other jurisdictions; however, the fact can be clearly established by decisions from other jurisdictions cited by both counsel for appellant and for appellee that such authority does exist.

The case of Laredo Improvement Company. v. Stephenson, reported in 66 Fed. Rep. p. 633, being a decision of the Circuit Court of Appeals for the Eighth Circuit, dealing with the statutes of the State of Texas, had the following to say:

"Corporations created under statutory authority are the mere creatures of the statute. Their powers are measured by the statute under which they have their existence. Beyond the limits of the powers there granted, and those fairly incidental thereto, they can neither act not agree· to act. Corporations thus created have no implied power to change the amount of capital prescribed in their charters, and all attempts to do so, not expressly authorized by the statutes under which they exist, are void." (Citing Scovill v. Thayer, 105 U. S. 143 and numerous other authorities.)

"This brings us to the consideration of the question whether or not the limitation of the powers to increase their stock imposed upon corporations by Article 1576 was removed by the provisions of Article 573, which allows them to amend their articles generally. We are, however, spared the examination of this question. Its determination rests entirely upon the construction of the statutes of Texas, and since the trial of this case the supreme court of that State has decided it. In Kampmann v. Tarver (Tex. Sup.), 29 S. W. 768,—a case involving the validity of the increase of capital stock made by this very corporation,—the Supreme Court of Texas held, in an opinion de-

livered February 7, 1895, that the limitation imposed by Article 576 was still in force, that no corporation created under the amended Act of 1874 could lawfully increase its capital stock beyond double its original amount, and that all stock issued in excess of that limit was void. This decision concludes the discussion of this question."

By reference to the case of Kampmann v. Tarver, 29 S. W. 768, we find the following:

"Article 571 reads in part as follows: 'Any private corporation heretofore organized or incorporated, or which may hereafter be organized or incorporated for any of the purposes mentioned in this chapter may amend or change its charter or act of incorporation by filing, authenticated in the manner required by this chapter as to an original charter of incorporation, such amendments or changes with the Secretary of State,' etc.

"Article 573 has an important bearing upon the determination of the question. It contains the following provision: 'No amendments or changes violative of the Constitution or laws of this State or of any of the provisions of this title, shall be of any force and effect.'

"The following is the language of Article 576: 'Art. 576. Any corporation may increase its capital stock to any amount not exceeding double the amount of its authorized capital by a vote of the stockholders in conformity with the by-laws thereof; and if a majority of the stockholders shall vote for the increase of stock the same may be increased by the board of directors, trustees or other business managers of such corporation,' and so forth."

In that case, upon the question of whether or not a corporation could by amendment of its charter increase its capital stock to an amount in excess of double the amount

of its authorized capital, the Court had the following to say:

"By the well settled rule of construction, Articles 571 and 576, if consistent with each other, must both be given effect. The intent of the Legislature which passed the Act of April 23rd, 1874, that both should stand, is made manifest by the fact that when they inserted the new provision which confers upon corporations the power of amending their charters, they retain the section in regard to the increase of the capital stock. The incorporation of both provisions in the Revised Statutes also evinces the same intention. We must hold, therefore, that the special provision in regard to the measure of stock was retained in the law in order to subserve some purpose. If it was intended by Article 571 to empower a corporation to increase the capital stock to an unlimited amount, why provide by Article 576 a method by which such stock could be increased within a certain limit?"

And further states:

"We apprehend, therefore, that the provision contained in Article 576 was retained in the statute for a definite object, and that such object was to place limitations upon the increase of the capital stock of corporations organized under the general law, both as to the amount of the increase and as to the manner in which such increase should be effected."

Again, referring to the case of Palmer v. Bank of Zumbrota, *et al.*, in a decision of the Supreme Court of Minnesota, reported in 75 N. W., p. 380, text 381, we find the following language.

"We have been referred to no other statutory provision which it is claimed authorizes an amendment of the articles of incorporation so as to provide for an increase of the capital stock of such a bank, unless said Section 18 of

Chapter 33 as originally passed, authorized such an amendment. This section reads as follows:

" 'Section 18. . It shall be lawful for any person or association of persons organized under the provisions of this chapter, by his or their articles of association to provide for an increase of their capital stock, and of the numbers of such association, from time to time, as they may think proper.'

"Respondents contend that this section authorizes an increase in the capital stock only when the original articles of incorporation provide for such an increase in the future. We are of the opinion that, even though the original articles do not so provide, the section authorized a subsequent amendment of the articles so as to provide for an increase of the capital stock. · Section 14 of Article 33 as originally enacted, provides that 'no change shall be made in the articles organizing such a bank whereby the rights, remedies or securities of existing creditors shall be in any manner impaired.' This evidently contemplates changes or amendments in the articles, but there is no section or provision in the Act, unless it is Section 18, which expressly authorizes any change or amendment. Again, Section 11 provides that the articles of incorporation shall specify: 'Third: The amount of capital stock, and the number of shares into which the same shall be divided.' ' "

And further on the Court says:

" 'Then we are of the opinion that the Legislature intended to provide, by Article 18, that the amount of the capital stock might be increased by an amendment of the articles 'from time to time.' "

The Supreme Court of Minnesota further held in this same case, at page 382 text:

"But this statute is wholly silent as to the method of

proceeding to make the amendment. In such a case the same formalities that were required with reference to the execution, filing, and publication of the original articles when such a corporation is organized will be required with reference to the amendment."

This same case further held:

"There are other formalities which were required as to the original articles which were not complied with as to the amendment. Then it is plain that the statute was not complied with in the attempt that was made to increase the amount of the capital stock. But in our opinion it does not follow from this that the new stock is void for all purposes. As to creditors who have become such on the faith of the new stock, the holders of the same are estopped to deny its validity."

Sections 6014 (4085), 6016 (4087), and 6069 (4138), Compiled General Laws of Florida, 1927, read as follows:

"6014 (4085). *Method of Increase.*—Any corporation may increase its capital stock to any amount by holding an election of the stockholders at its place of business, having published notice of the time and place and object of the meeting once a week for four weeks prior thereto, in one newspaper published in the county, and having served or mailed the usual notice for stockholders' meetings; and if at any such meeting two-thirds of all the stockholders in the corporation shall vote to increase the capital stock, it shall be the duty of the president, within thirty days thereafter, to make a return to the Secretary of State under oath, of the amount of such increase, and the terms on which such additional stock is issued, and from the time the said return is filed the increase of stock shall be authorized, and when issued shall become a part of the capital."

"6016 (4087). *Method of Amending Charter.*—Any

corporation desiring to alter or amend its charter shall adopt the proposed alteration or amendment by a vote of three-fourths of all its stock, at a meeting held for that purpose, and called and notified as provided for meetings for increase of capital stock. If the proposed alteration or amendment shall be so adopted, the corporation shall give not less than five days' notice of the intention to apply to the Governor therefor by at least one publication in some newspaper published in the county wherein the principal place of business is located, setting forth the desired alteration or amendment. The corporation shall prepare a certificate, under the common seal, of the proposed alteration or amendment as adopted as aforesaid, which certificate shall be on file in the Secretary of State's office during the time of publication, and afterwards, together with the proof of publication and notice, shall be produced to the Governor, who shall examine the same, and if he finds it to be in proper form, and that due notice has been given, and that the proposed alteration or amendment will be beneficial and lawful, and not injurious to the community, and is in accord with the purposes of the charter, he shall approve thereof, and thereupon letters patent shall issue reciting the alteration or amendment, and the said letters patent shall then be recorded in the Secretary of State's office, and then in the office of the clerk of the circuit court where the original charter was recorded, and from the date of the recording in the Secretary of State's office, the said alteration or amendment shall be deemed and taken as a part of the charter. (Ch. 9123, Acts 1923, Sec. 2; Ch. 9124, Acts 1923, Sec. 2)."

"6069 (4138) REGULATED. — Any banking company formed under this chapter may by its charter provide for an increase of its capital from time to time, as may be deemed

expedient, subject to law; but the maximum of such increase to be provided in the charter shall be determined by the Comptroller, and no increase of capital stock shall be valid until the whole amount of such increase is paid in and notice thereof has been transmitted to the Comptroller and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as a part of the capital of such company. No reduction of capital stock shall be made below the minimum. (Id. Sec. 11, 12.).''

While it is argued by defendant in error:

. "A banking corporation, having exhausted its authority to increase its capital stock by reason of the fact the maximum sum stated in its charter has been reached, cannot further increase its capital stock, without proceeding to amend its charter under the provisions of Section 6016," we are unable to agree with this statement. It is insisted by defendant in error that Section 6069 stating any banking company formed under this charter "may provide by its charter for an increase in its capital from time to time" is exclusive and that this statute points out the mode of increasing the capital; and reference is made to an opinion of the Attorney General of the United States given to the Secretary of the Treasury, February 23rd, 1882, in which three things are pointed out, as necessary to increase capital of a national bank under the federal statute, which was almost identical in terms with the section mentioned—6069, viz.:

"First, that the association in the mode pointed out in its articles, and not in excess of the maximum provided for by them, shall assent to an increased amount;

"Second, that the whole amount of the proposed increase shall be paid in as part of the capital of the association;.

"Third, that the comptroller of the currency, by his certificate specifying the amount of such increase of capital stock, shall approve thereof, and certify to the fact of its payment."

. This appears to have been a correct statement of the law relating to that provision of the federal statute. The same statements are found in the case of Winters v. Armstrong, reported in 37 Federal Reporter 508, text 511 and taken from the case of Delano v. Butler, 118 U. S. 649. That "the mode pointed out is the mere authority to act, we are not able to agree. The mode pointed out may be merely by a vote of the Board of Directors. The mode pointed out may also deal with the notice, if any, that is to be given. This we think is made clear by the oft-cited case of Delano v. Butler reported in 118 U. S. 649, in which the court stated the facts affecting the increase of stock of Pacific National Bank, as follows:

"The Pacific National Bank was duly organized and authorized to do business as a National Bank under the provisions embraced in Title 62 of the Revised Statutes of the United States and located in Boston in October, 1877. Its capital stock was 'fixed at five hundred thousand dollars, paid in cash, with the right to increase it to a million dollars. It continued business on this basis until September 13th, 1881, when it appears by the records of a meeting of the board of directors held in Boston it was voted 'that the capital stock of this bank be increased to one million dollars and that stockholders of this issue have the right to take the new stock at par in equal amounts to that now held by them.' "

It is therefore evident that the holding of this Court that under the statutes of Florida there exists authority for an

increase of the capital stock of a banking corporation, is well supported by authorities of other jurisdictions.

We then reach the question: Is there power vested in a banking corporation to increase its capital without securing an amendment to its charter. In an able and exhaustive brief of counsel for defendant in error, we are given the history of Sections 6014 and 6016 and 6069, Compiled General Laws (1927): Section 6016, being the Act of 1923, is the final amendment of Section 3, Chapter 3165 of the Laws of 1879. The defendant in error insists that *if the capital stock of this bank could be increased,* it could be increased in no manner except by securing an amendment to the charter. His reasoning therein is supported by statement in the decision of Randall v. Mickle, 138 Southern 14 and 141 Southern 317. However, when it is borne in mind, as shown by brief of counsel for defendant in error, that Section 6014 permitting any corporation to increase its capital stock to any amount by holding an election of the stockholders, as therein provided, was enacted in 1868, and that this section minutely prescribes the notice to be given, and that Section 6016 above referred to, dealing with amendment to charters, provides that: 'a meeting held for that purpose shall be called and notified *as provided for meetings for increase of capital stock*' we are compelled to hold that our own Legislature has dealt with the amendment of a charter of a corporation for profit whereby the capital stock is increased as being a separate and distinct act from an amendment of its charter in any other particular. In other words, while, under the general law for the incorporation of any corporation for profit, the amount of capital stock authorized, and the number and par value of shares into which it is to be divided, and the number and par value of shares into which it is to be divided, and the terms and conditions

upon which it is to be paid, are required to be stated in the charter, yet, prior to the time such a corporation was authorized to amend its charter, there was given to it authority to increase its capital stock, as provided and set forth in Section 6014 C. G. L. (1927).

Now, it is insisted that Section 6014 does in effect read: That any corporation (except a banking corporation) may increase its capital stock to any amount. A banking corporation is authorized according to law to amend its charter so as to provide for an increase of its capital stock, merely because it is permitted and allowed, and not required, to provide in its charter; that is, anticipate and prescribe the manner, method and mode, for an increase of its capital stock from time to time; however, under the provisions of Section 6069, if the charter of a banking corporation does provide for an increase of its capital stock from time to time, the amount provided, that is, the maximum amount provided, must be determined by the Comptroller. If a charter of a banking corporation provided for an increase in capital stock, we think by an amendment of its charter, as above stated, provision could be made changing the amount or maximum amount of its capital stock, provided the same was determined by the Comptroller; and in the event the charter of a bank made no provision for an increase of its capital stock, since it is permitted to so provide in its charter, an amendment might be made pursuant to law, the maximum increase to be provided in the charter being determined by the Comptroller. Whether or not that is the exclusive method in which the capital stock of a banking corporation may be increased is a question now before this Court upon the pleadings in this case. Section 6014 antedates Section 6069, which we think is material in construing the intent of the Legislature, and since corporations for

profit generally may increase capital stock notwithstanding the positive statement in the charter originallly granted fixing the amount of stock and the number of shares, without in any other wise amending the charter, we are compelled to hold: the increase of capital stock and the amendment of .a charter are dealt with by our lawmakers as two separate and distinct acts, and that a banking company merely had the added privilege of prescribing the mode, method and manner of increasing its capital stock from time to time, subject to law, *provided the amount provided in its charter,* originally or by amendment, is determined by the Comptroller. We have not overlooked Section 6051, C. G. L. (1927), relating to corporations for profit, and immediately proceeding the sub-chapter relating to banking corporations and companies, as follows:

"The foregoing provisions shall apply to every class of corporation for profit, except as limited by the special provisions of the Sub-Chapters hereof."

We are therefore further compelled to hold that the increase of the capital stock of a banking corporation, whether made by amendment of the charter or pursuant to Section 6014 is subject to that portion of Section 6069 which says:

"And no increase of capital stock shall be valid until the whole amount of such increase is paid in and notice thereof has been transmitted to the Comptroller and his certificate obtained certifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in and is a part of the capital stock of the company."

This last quoted portion of Section 6069 in our opinion constitutes the only limitation upon the authority of a banking corporation to increase its capital stock, as provided in Section 6014; in other words, by full compliance with Section 6014. It is provided therein: *"From the time the re-*

*turn is filed the increase shall be authorized, and when issued
shall become a part of the capital."* Therefore, when the
same has been authorized, stock issued and the amount of
the increase is paid in, and notice has been transmitted to
the Comptroller and a certificate obtained specifying the
amount of such increase, with his approval, and it has been
paid in as a part of the capital stock of the company, the
same is valid in all particulars. Under the banking laws
by which the Bank of Bay Biscayne was organized, it was
not authorized to do business in the beginning until its cap-
ital stock has been fully paid in and the Comptroller had
approved and certified to such fact; and had it undertaken
to do business, other than such as was incidental and neces-
sary to its preliminary organization, until it had been au-
thorized to do so by the Comptroller, its stockholders would
have been personally liable for all its debts as if they were
members of a partnership and *not stockholders of a cor-
poration.* Section 6060 C. G. L. (1927) ; and yet, by Sec-
tion 6077 (4146) C. .G. L. (1927), it is recognized that at
times the capital stock of a banking corporation has not all
been fully paid in, and whether this law is made anticipat-
ing such failure to fully pay in the capital stock in the be-
ginning or by amendment appears immaterial. By this sec-
tion it is provided that every banking company which shall
have failed to pay up the capital stock·as required by law,
and every banking company whose capital stock shall have
become impaired by losses or otherwise, shall, upon receiv-
ing notice thereof from the Comptroller, pay the deficiency
in the capital stock by assessment on the stockholders pro
rata for the amount of the capital stock held by each. If
any such company shall fail to pay up its capital stock and
shall refuse to go into liquidation as provided by law,
within the time mentioned in the notice from the Comp-

troller, a receiver may be appointed to close up the business of the company according to the provisions of Section 6102.

An interesting case dealing with corporate authority, and likewise a case that has some bearing on the questions here presented, is that of Smith v. Milton, *et al.,* reported in 54 Southern, p. 719.

That case involved the legality of a bond issue of the Town of Marianna. The general law by which the town was governed, Chapter 5465, Acts of 1905, permitted the issuance of bonds for purposes therein specified, providing, however, the amount should not exceed ten (10%) per cent of the assessed value of all real and personal property within the corporate limits.

By Chapter 5517, Laws of 1905 (a special Act applicable to the Town of Marianna alone), authority was given to issue $25,000.00 of bonds in excess of $10,000.00 of bonds then already issued. The issuance of the bonds thereby authorized exceeded 10 per cent of the assessed value of all real and personal property within said corporate limits.

This Court stated: "The sole question presented by this appeal is whether the general Act, Chapter 5465, approved May 19th, 1905, is, so far as the town of Marianna is concerned, superceded or repealed by Chapter 5517, approved May 31st, 1905."

It was held the general Act, the authority to issue bonds, is a continuing power that keeps even pace with any increase from time to time in the accumulation of tax assessable property within the corporate limits, and is at all times limited to ten per cent of the assessed value of such property.

It was further stated, among other things: "The special Act supplies an emergency only, and after such emergency is met, such special Act becomes *functus officio.*"

Since the Bank of Bay Biscayne did have authority under Section 6014 to increase its capital stock, the plea in this cause failed to state a defense and the demurrer to the replication should have been visited upon the plea, with leave to further plead.

The holding in the original opinion in this case that power is vested in the bank under Section 6016 to amend its charter, is modified to conform herewith. The holding in the case of Randall v. Mickle in 138 Southern, p. 14, and in 141 Southern, p. 317, is disapproved to the extent only that it states a banking corporation was without authority to increase its capital stock without securing an amendment of its charter providing for such increase as provided in Section 6016.

Judgment of reversal reinstated on rehearing, and cause remanded for further proceedings not inconsistent with this opinion or the original opinion as hereby supplemented and modified.

It is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., disqualified.