643 So.2d 1136 (1994)
Robert RISSMAN, on Behalf of RISSMAN INVESTMENT COMPANY, a Michigan Partnership, as general partner of Brittany of Michigan, a Michigan Limited Partnership, Appellant,
v.
R. KILBOURNE, M.L. Kilbourne, Leroy Edgeley and Jacqueline Edgeley, and Good Life Resorts, Inc., a Florida corporation, Appellees.
No. 93-1648.
District Court of Appeal of Florida, First District.
September 22, 1994.
*1137 Raymond M. Ivey of Raymond M. Ivey, P.A., Gainesville, for appellant.
Stephen A. Scott, Gainesville, for appellees.
KAHN, Judge.
Appellant Robert Rissman appeals from a final judgment for defendants. On appeal, he contends that the trial court erred in finding (1) appellees were not estopped from asserting a greater balance due on a promissory note based on their estoppel letter of April 28, 1980, (2) his letters of June 20, October 4, and November 20, 1990 did not constitute tenders, and (3) appellees were entitled to attorney's fees. We affirm in part and reverse in part.
On January 7, 1980, Robert Rissman contracted to purchase from Brittany, Ltd. real property in Alachua County. The purchase price was $1,100,000 amended to $1,050,000 with $50,000 being paid to Brittany, Ltd. in consideration of a noncompete agreement. Pursuant to the terms of the Purchase and Sale Agreement, Rissman agreed to give the seller, Brittany, Ltd., a promissory note in the amount of $875,000, secured by a mortgage on real property (the all-inclusive note). The balance of the purchase price, $225,000, was to be paid in cash at closing.
At the time of the purchase, the property was encumbered by three mortgages: a first mortgage in favor of Sun Bank of Gainesville, a second mortgage now held by Good Life Resorts, Inc. (the subject mortgage), and a third mortgage in favor of Brittany Financial, Ltd.[*] As stated in the all-inclusive note, Brittany, Ltd.'s equity therein was the difference between the then unpaid balance of the all-inclusive note and the sum of the then unpaid balances of the underlying mortgages.
The all-inclusive note given by Rissman to Brittany, Ltd. provided that Rissman would make the monthly payments to the holders of the three underlying mortgages and deduct these payments from the monthly payment due Brittany, Ltd. on the all-inclusive note. The difference  $1,744.69  was paid to Brittany, Ltd. each month.
*1138 After execution of the Purchase Agreement, Rissman obtained, from the holders of the underlying mortgages, letters stating the balances due on each of their mortgages. Upon the request of the seller's agent, Good Life's servicing agent, First American Title Insurance Company of Arizona sent a letter dated April 28, 1980, to Rissman's attorney, Arthur Braverman, in which Good Life stated that the unpaid principle balance as of April 1980 was $193,568.17.
Rissman purchased the subject property, paid Brittany, Ltd. the balance of the purchase price and paid to the underlying mortgage holders all sums due them on their mortgages. After purchasing the subject property, First American sent Rissman annual account statements on the Good Life mortgage. Each statement reflected a balance consistent with the April 28, 1980, letter from First American.
In 1982, Rissman filed suit against Brittany, Ltd., the seller of the real property, for breach of the purchase agreement regarding warranties given concerning the sewer system on the real property. At the conclusion of the trial, judgment was entered in favor of Rissman and against Brittany, Ltd. Since the damages ($334,373.55) exceeded Brittany, Ltd.'s balance or equity in the all-inclusive note and because the court intended to cancel out Brittany, Ltd.'s equity in the note, Rissman again obtained, from the holders of the underlying mortgages, including Good Life, balances then due in order to determine Brittany, Ltd.'s equity in the all-inclusive note. Again, Good Life confirmed a balance consistent with its April 28, 1980 letter. By subtracting the balances of the underlying mortgages from the balance due on the note, the court was able to determine Brittany, Ltd.'s equity in the all-inclusive note ($197,319.00), which the court canceled. The balance of the damages ($137,054.55) was awarded Rissman by way of final judgment. After entry of the final judgment, Rissman negotiated and accepted $45,000.00 from Brittany, Ltd. in satisfaction of the final judgment.
As of late 1989, according to Rissman, Good Life, through First America, continued to verify an amount consistent with the April 28, 1980, letter. At that time, Rissman's C.P.A. maintained records reflecting that amount.
By letter of June 6, 1990, and pursuant to Rissman's request for a payoff statement on the Good Life mortgage, First American noted that an error had been made in the April 28, 1980, statement. First American stated that the recomputed unpaid principle balance of $175,445.28 was owed rather than $108,450.44, which would have been the balance of the subject mortgage in accordance with the April 28, 1980 letter, the annual statements and the balance reported after the 1982 Brittany, Ltd. lawsuit.
Rissman contends that he tendered payment by letters of June 20, October 4 and November 20, 1990, in accordance with the original April 28, 1980 letter, in the full amount of all sums due on the subject promissory note and mortgage. Good Life has consistently denied that any legal tender occurred by, with, or as a result of these three letters.
The first letter is dated June 20, 1990, written by Dennis A. Darin, Jr., an attorney purporting to represent Brittany of Michigan, Ltd. (in which Rissman was the general partner) and addressed to First American Title. The alleged "tender" stated:
Our client['s] records, based upon your original advice, and upon all of your subsequent confirmations, show a balance as of June 1, 1990 of $108,450.44 plus appropriate interest. Its position is that you and your principal are now estopped from denying the accuracy of this balance. We demand that this sum be accepted in full settlement of the mortgage in question and that you forward a pay-off letter stipulating that amount... .
The second letter, which is dated October 4, 1990, written by Rissman's current counsel and addressed to John K. Graham, First American Title's counsel and vice president, states:
In connection with the above-referenced account and pursuant to Dennis A. Darin, Jr.'s letter of June 20, 1990, Request is hereby made, pursuant to Section 701.04, Florida Statutes, that First American Title agree to accept the sum of $108,450.44, *1139 plus appropriately accrued interest as payment in full on the promissory note and in satisfaction of the mortgage given as security.
The third letter is a letter dated November 20, 1990, written again by Rissman's current counsel and addressed to John K. Graham. The letter states:
In connection with the above-referenced account, please be advised that Michigan National Bank holds the sums necessary to pay off the account. Specifically, the bank and the present owner of the property, Brittany of Michigan, do hereby tender the principal sum of $103,273.43 plus accrued interest as payment in full... .
The pay-off proceeds are being held by Michigan National Bank, in trust; pending your response and instructions. Please advise the method you prefer to handle exchange of the proceeds and delivery of the satisfaction of mortgage. Again, we stand ready, willing and able to transmit the pay-off proceeds.
After receiving no response to the letters, Rissman filed suit on March 5, 1991, seeking a declaration of the balance due on the all-inclusive note and mortgage. On March 23, 1993, the cause was tried without a jury before Judge Maurice V. Giunta. The trial court rendered a final judgment for Good Life on May 4, 1993. In the final judgment, the trial judge, without explanation, ruled "that the amount which the plaintiff is obligated to pay on the subject promissory note and mortgage is $175,479.78 as of August 1, 1990. Interest continued to accrue thereon from said date pursuant to the provisions related thereto in the subject promissory note." The court further held, again without any explanation, that the letters of June 20, October 4, and November 20, 1990, do not constitute tenders. The court also found Rissman was not entitled to an executed satisfaction of the subject mortgage or attorney's fees and reserved jurisdiction to determine attorney's fees and costs against Rissman and in favor of the defendants.
The trial court erred in finding that Good Life Resorts, Inc., the owner and holder of the subject promissory note and mortgage, was not estopped to claim a balance due in 1990 which is inconsistent with its estoppel letter of April 28, 1980. The elements of estoppel are: (1) a misrepresentation of a material fact by the party estopped to the party claiming estoppel as to some material fact, (2) a reliance upon this representation by the party claiming estoppel, and (3) a change in the position of the party claiming the estoppel to its detriment based on the misrepresentation. State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla. 1981); Council Brothers, Inc. v. City of Tallahassee, 634 So.2d 264, 265 (Fla. 1st DCA 1994). Rissman proved these elements.
Prior to consummating the Purchase Agreement, Rissman requested estoppel letters from the holders of the underlying mortgages. By letter dated April 28, 1980, Good Life's servicing agent, First American, misrepresented to Rissman's attorney, Arthur Braverman, the principal due on Good Life's mortgage. See Council Brothers, Inc. v. City of Tallahassee, supra (misrepresentation by city's agent estopped city from requiring subcontract to pay systems changes on facility); see also Atlantic Masonry v. Miller Constr., 558 So.2d 433 (Fla. 1st DCA 1990) (third party may assert promissory estoppel); Fotomat Corp. of Florida v. R.B. Films, Inc., 366 So.2d 1213 (Fla. 1st DCA 1979) (same). In reliance thereon, Rissman changed his position to his detriment by proceeding to close on the property. He further relied to his detriment on Good Life's misrepresentations in structuring the financing with Brittany, Ltd. and making a cash payment at closing.
Good Life made additional misrepresentations after closing. Pursuant to the all-inclusive note, Rissman paid monthly to each of the underlying mortgage holders, including Good Life, those payments due them, and paid the balance of the monthly mortgage payment due on the all-inclusive note  1,744.69  to Brittany. Beginning in 1981 and every year thereafter, Good Life's servicing agent, First American, sent to Rissman annual account statements on the subject mortgage. The account statements gave each year's beginning balance, the payments received and the year-ending balance. Each of these statements was consistent with the *1140 April 28, 1980 estoppel letter. Good Life again gave balances consistent with its April 28, 1980 estoppel letter in late 1989 when First American confirmed the amount owed. After Rissman conducted various transactions related to the property over a number of years in reliance upon the balance represented in 1980, Good Life, in effect, seeks to have Rissman pay an additional $67,000 above and beyond the $1,050,000 purchase price for the property.
Rissman further demonstrated the elements of estoppel in the events surrounding Good Life's 1982 representation of the amount owed on its mortgage. Rissman relied on that amount in the 1982 lawsuit against Brittany, Ltd. Good Life admits that if the correct figures had been given, Brittany's equity would have been reduced and Rissman would have received a greater monetary judgment. Nonetheless, Good Life maintains this resulted in no detriment because the seller was judgment proof. Rissman testified, however, that he settled the $137,000 final judgment against Brittany, Ltd. for $45,000. Rissman's account of the settlement is unchallenged in the record before us.
We find Rissman has established that Good Life Resorts, Inc. was estopped from asserting an additional $67,000 in principle and interest. We also conclude, however, that he has failed to demonstrate the trial court erred by finding the 1990 letters did not constitute tenders.
Although McGehee v. Mata, 330 So.2d 248 (Fla. 3d DCA 1976), holds that a tender made subject to a condition upon which the party has a right to insist is a valid tender, appellant failed to actually tender the money to Good Life. A "tender" is defined as "an unconditional offer of payment consisting in the actual production, in current coin of the realm, of a sum not less than the amount due on a specific debt or obligation" (e.s.). 74 Am.Jur.2d Tender § 1 (1974). The only distinction between tender and payment lies in the fact that a tender is not accepted, while a payment is. Id.
Strictly speaking, a money obligation may be discharged only by current coin of the country. A tender in the bills and notes of a bank is not a tender of specific articles, and does not discharge the debt. But bills and notes are generally treated as money in various commercial and business transactions, and may be regarded as a good tender if no objection is made thereto. A certified check may be treated as cash when tendered as long as sufficient funds are in the bank to redeem the check when it is presented for payment. Although a creditor may object to and refuse a tendered personal check, if the creditor fails to object, or objects on grounds other than inadequacy of the consideration, the circumstances may give rise to a waiver as to the form of the tender. (footnotes omitted)
39 Fla.Jur.2d Payment and Tender § 4 (1982); see also Hudgins v. Florida Federal Savings and Loan Ass'n, 399 So.2d 990 (Fla. DCA 1981) (tender of personal check is not equivalent of cash or certified check; delivery of personal check is at best conditional payment because whether or not it is drawn on trust account or escrow account, it is not finally paid until conclusion of settlement process and in interim, account may fluctuate in amount, may be garnished or may be set off by bank, or drawer may stop payment on check); Summa Investing Corp. v. Resolution Trust Corp., 586 So.2d 1278 (Fla. 3d DCA 1991) (same).
Rissman's letters are proposals to submit a tender rather than tenders. See Black's Law Dictionary 1315 (5th Ed. 1979) ("tender" is defined in part as "[t]he actual proffer of money, as distinguished from mere proposal or proposition to proffer it. Hence mere written proposal to pay money, without offer of cash is not `tender'"); Aetna Casualty & Surety Co. v. Protective Nat'l Ins. Co., 631 So.2d 305 (Fla. 3d DCA 1994) (mere oral offer to tender does not constitute a legal tender because a check in the offered amount was never actually delivered, nor was an attempt of such delivery made); Jacobs v. Automotive Repair Center, Inc., 137 So.2d 263, 265, n. 1 (Fla. 1st DCA 1962) (citing Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929) ("`Tender' has a definite legal signification). It imports not merely the readiness and ability to pay *1141 the money or to deliver the deed or other property, at the time and place mentioned in the contract, but also the actual production of the thing to be paid or delivered and an offer of it to the person to whom the tender is made"). Although Rissman claims he could not proffer the specific amount by "coin of the realm" because Good Life never informed him of the amount due, he cites no authority indicating that a letter informing the creditor where the proceeds are being held in trust pending the creditor's response and instruction would be sufficient to constitute a tender without an actual attempt to deliver the money. Thus, no abuse of the trial judge's discretion is shown as to the finding of no tender.
Finally, the trial court erred in reserving jurisdiction to determine and assess attorney's fees and costs against Rissman and in favor of Good Life. Good Life is not entitled to attorney's fees and costs in this case under the terms of the all-inclusive note and mortgage or otherwise.
We AFFIRM the trial court's order on the issue of tender and REVERSE the trial court's judgment on the estoppel and attorney's fees issues.
ERVIN, J., and REYNOLDS, GEORGE S., Associate Judge, concur.
NOTES
[*] Brittany, Ltd., the seller, and Brittany Financial, Ltd., the holder of an underlying mortgage, are unrelated entities.