698 So.2d 1264 (1997)
D.S. KEANIE, etc. et al., Appellant,
v.
Scott GOLDY, Appellee.
No. 96-2627.
District Court of Appeal of Florida, Fifth District.
August 1, 1997.
Rehearing Denied September 16, 1997.
*1265 William B. Milliken of Hayden and Milliken, P.A., Miami, for Appellants.
Kimberly Sands of Sands, White and Sands, P.A., Daytona Beach, for Appellee Scott Goldy.
HARRIS, Judge.
The first issue in this case is whether the court erred in determining that section 55.03, Florida Statutes, as amended in 1994, requires that the interest on the judgment herein must be amended annually. In Beverly Enterprises-Florida, Inc. v. Spilman, 689 So.2d 1230 (Fla. 5th DCA 1997), we held that the language of section 55.03 "makes it clear that the legislature was establishing a procedure for fixing a flexible interest rate for judgments entered on or after January 1, 1995." Although this statement was obiter dictum in Spilman, it is a central issue in this case. We are not talking here about the retroactive application of the statute; we are concerned with whether the statute's adjustable rate provision requires an annual adjustment of the interest due on outstanding judgments entered after the effective date of the *1266 statute. To answer this question, we need to review the history of section 55.03.
The 1981 version of the statute provided:
(1) A judgment or decree entered on or after October 1, 1981, shall bear interest at the rate of 12 percent a year unless the judgment or decree is rendered on a written contract or obligation providing for interest at a lesser rate, in which case the judgment or decree bears interest at the rate specified in such written contract or obligation.
Therefore in 1981 the legal rate of interest was established to be 12 percent unless the judgment was founded on a written obligation which provided for a lesser interest rate. In order that the sheriff could determine what the appropriate interest rate should be once he was asked to execute on the judgment, the legislature provided in subsection (2) of the statute:
(2) Any process, writ, judgment, or decree which is directed to the sheriffs of the state to be dealt with as execution shall bear, on the face of the process, writ, judgment, or decree, the rate of interest which it shall accrue from date of judgment until payment.
It is apparent that the original purpose of this subsection was to indicate to the sheriff whether the legal rate of interest was being assessed or whether a lesser contract rate applied. It is true that the form judgment which accompanies the rules shows a place for a specific number to be entered before the percent sign in the interest provision. And before the flexible interest amendment, a specific number, either the legal rate or the lesser contract rate, would have been appropriate. The insurer herein urges that since subsection (2) was not amended when the legislature changed to a variable interest rate, it must have intended that the legal rate of interest on the date of the judgment should prevail throughout the life of the judgment. We disagree. Subsection (2) can be interpreted in light of the new policy indicated by subsection (1) to merely require that the sheriff be advised as to whether the legal rate or some specific contract rate applies. If the judgment indicates on its face that it shall bear interest "at the legal rate," then it meets the statutory requirement to show which rate applies. Certainly the sheriff is competent to determine what the legal rate was for any given year and to enforce the judgment accordingly.
Although admittedly subsection (2) can be interpreted to require a specific numerical entry for the interest rate, an interpretation that permits the variable rate is more consistent with the apparent legislative intent to subject unpaid judgment obligations to changing market conditions. It is also more consistent with the statement in Applestein v. Simons, 586 So.2d 441, 442 (Fla. 3rd DCA 1991) rev. denied, 598 So.2d 78 (Fla.1992):
Generally the interest rate would change on an unsatisfied final judgment as the statute prescribing the rate of interest is amended, unless otherwise provided in the basic agreement upon which the judgment was rendered.
There is no prohibition against applying a variable interest rate to an unpaid final judgment. As the court held in Glades County, Fla. v. Kurtz, 101 F.2d 759, 760 (5th Cir. 1939):
It is conceded that there was no intention on the part of the Florida Legislature to divest or reduce the interest which had accrued on the judgment before the amendment was passed, appellant contending that the rate was reduced to 6% on and after that date. The appellee contends, and the lower court held, that, notwithstanding the provision of the amendatory act, the judgment bore interest at the rate of 8% per annum from date of its rendition to date of the decision under review. We agree with the appellant that after July 1, 1933 (the effective date of the amendment), the rate of interest was reduced to 6% per annum.
The principal contention of appellee is that the judgment and the statute constitute a contract for the rate of interest specified in the statute. We are unable to concur in this view. Without regard to an express provision in the judgment for interest after date of entry, the statute in question fixed the amount to be recovered on the judgment as damages for its nonpayment. The *1267 rate thus determined was not contractual, and the power of the state to change or modify it was neither exhausted by the rendition of the judgment nor restricted by constitutional limitations.
Further, it should be noted that section 55.03 expressly provides that the Comptroller "shall set the rate of interest that shall be payable on judgments or decrees for the year beginning ... and the interest rate established by the Comptroller in subsequent years shall take effect on January 1 of each following year." (Emphasis added). In addition, it is clear that the legislature recognized that a particular judgment might carry different rates of interest by providing: "Judgments obtained on or after January 1, 1995, shall use the previous statutory rate for time periods before January 1, 1995, for which interest is due and shall apply the rate set by the Comptroller for time periods after January 1, for which interest is due."
The second issue is whether the tender by the insurer of its policy limits ends its obligation to pay subsequent post judgment interest under the policy provision which states:
Underwriters will pay, in addition to the applicable limit of liability:
a) all expenses incurred by Underwriters, all costs taxed against the insured in any suit defended by Underwriters, and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before Underwriters has paid or tendered or deposited in the court that part of the judgment which does not exceed the limits of the Underwriter's liability thereon.
Appellant takes the position that once it has tendered its policy limits, no further obligation to pay post judgment interest exists. Appellee urges, and the trial court found, that before the obligation to pay post judgment interest ceases, the insurer must pay the policy limits plus all costs and post judgment interest due at the time of the tender. We agree with the court below and those courts in other jurisdictions that hold that the "Underwriter's liability thereon" includes accrued interest and costs as well as the policy limits. This interpretation gives the insurer an incentive to pay its obligation promptly.
Finally, there is a dispute as to whether a check drawn on the trust account of the attorneys representing the insurer in an amount sufficient to satisfy the policy limits as well as costs and accrued post judgment interest through the date of delivery of the check, which check is accepted without condition or reservation by the attorneys' representing the judgment creditor, satisfies any further obligation of the insurer to pay post judgment interest. We believe it does.
We recognize that the Fourth District in Estate of Woodruff, 647 So.2d 1045 (Fla. 4th DCA 1994), in reliance on our case of Hudgins v. Florida, Federal Savings and Loan Assn., 399 So.2d 990 (Fla. 5th DCA 1981), made a contrary ruling. But in Hudgins, there was a stipulation that payment would be either in cash or certified funds. The attorney's personal check was accepted only on the condition that the Federal would waive the cash/certified funds requirement and was returned to the attorney when the Federal would not waive the requirement. We held then, and we hold now, that the proffer of a personal check is not the equivalent of cash or a certified check. But that is not the issue before us now.
In the present case, the check was tendered and accepted without condition or reservation and immediately deposited into the account of the accepting attorneys. Had an objection to the insurer's attorneys' trust account check been made, then cash or certified funds could have been substituted. As stated in Rissman v. Kilbourne, 643 So.2d 1136, 1140 (Fla. 1st DCA 1994): "Although a creditor may object to and refuse a tendered personal check, if the creditor fails to object, or objects on grounds other than inadequacy of the consideration, the circumstances may give rise to a waiver as to the form of the tender." To hold that one who accepts a personal check on a due account is also entitled to interest on the debt until that check clears, even though he has not advised the payee of this claim, would open up countless actions, perhaps even class actions, for additional *1268 interest. The better rule, and the one we apply in this case, is that if one accepts a check as payment of an obligation, without objection or condition, then, if the check is honored, no further obligation on the debt can be claimed.
We therefore affirm the trial court in its holding that the interest on the judgment is subject to annual adjustment. We also affirm the trial court's decision that interest continues to accrue until the insurer pays or tenders the policy limits as well as costs and accrued post judgment interest through the date of the payment or tender. We reverse the trial court's determination that interest continued to accrue after the insurer's attorneys' trust account check was accepted without objection or condition.
AFFIRMED in part; REVERSED in part and REMANDED.
W. SHARP and ANTOON, JJ., concur.