744 So.2d 482 (1999)
MANDARIN PAINT & FLOORING, INC., A Florida Corporation, a/k/a Mandarin Paint & Decorating, Appellant,
v.
POTURA COATINGS OF JACKSONVILLE, INC., and Atlantic Alliance Fidelity & Surety Company, Appellees.
No. 98-1860.
District Court of Appeal of Florida, First District.
September 14, 1999.
Rehearing Denied October 15, 1999.
*483 John R. Stiefel, Jr., Holbrook, Akel, Cold, Stiefel & Ray, P.A., Jacksonville, for appellant.
Robert B. Guild, Hession & Guild, Jacksonville, for appellee.
BROWNING, J.
Appellant, Mandarin Paint & Flooring, Inc. (Mandarin), appeals a non-jury final judgment in its favor for $8,476.03, together with prejudgment interest of 10 percent and attorney's fees against Appellee, Atlantic Alliance Fidelity & Surety Company (Atlantic Alliance) in a lawsuit brought on a payment bond issued by Atlantic Alliance. Mandarin seeks a final judgment for $84,146.15 together with prejudgment interest of 18 percent and attorney's fees. Mandarin argues the trial court's finding it estopped to recover $75,670.12 of its $84,146.15 bill is not supported by competent substantial evidence. We reverse as to the principal amount awarded Mandarin because the trial court's determination of detrimental reliance by Atlantic Alliance on Mandarin's conduct is not supported by competent substantial evidence. We affirm the 10 percent rate of prejudgment interest awarded by the trial court.

I. FACTS
Mandarin, a paint supplier, sold paint to Potura Coatings of Jacksonville, Inc. (Potura), a painting contractor and not a party to this appeal. Atlantic Alliance is a bonding company that furnished a performance bond and a payment bond guaranteeing Potura's performance and payment of Potura's materialmen as a subcontractor under a contract with Contravest Construction Company of Heathrow, Florida *484 (Contravest), as the general contractor of a construction project.
After December 9, 1996, and after Potura commenced work for Contravest and purchased paint on credit from Mandarin for use on Contravest's construction project, Contravest determined that Potura's performance was deficient under their contract, removed Potura from the project, and alleged a breach of contract by Potura. Following Potura's removal, Contravest filed a claim under the performance bond issued by Atlantic Alliance based upon Potura's failure to complete its contract with Contravest. At the same time, Potura failed to pay Mandarin. Mandarin sued Potura, and Atlantic Alliance, as Potura's surety on the payment bond. Mandarin secured a default judgment against Potura for $84,146.15, and Mandarin's suit remained pending against Atlantic Alliance under the payment bond. At a non-jury trial, Atlantic Alliance asserted estoppel as an affirmative defense to its payment of $75,670.12 of Potura's total bill of $84,146.15 owed to Mandarin. The trial court agreed with Atlantic Alliance that Mandarin is estopped from claiming $75,670.12, and Mandarin appealed.
Atlantic Alliance's claim of estoppel is based upon signed waivers of lien and a signed statement of account given by Mandarin to Potura prior to December 10, 1996, before the termination of Potura as a subcontractor by Contravest. To secure these documents from Mandarin, Potura represented to Mandarin that it could not pay Mandarin until Potura was paid by Contravest for work done, and Contravest would not pay Potura until Potura proved to Contravest that it had paid Mandarin for the paint purchased. As a result, Mandarin routinely and repeatedly gave Potura signed waivers of its mechanics lien for presentation to Contravest. Potura used the waivers to induce payments from Contravest, but after receiving the payments, Potura failed to pay Mandarin. Mandarin disregarded Potura's failure to pay and continued to trust Potura and to sign waivers. Finally, on December 9, 1996, Mandarin, at Potura's urging, signed a sworn statement that Potura was not indebted to Mandarin as of that date. Potura presented this to Contravest to induce a further and final payment.
While Mandarin's suit against Atlantic Alliance was proceeding, Contravest was negotiating its claims against Atlantic Alliance under the performance bond. During negotiations with Contravest, Atlantic Alliance was aware of the sworn statement of account and waivers of lien given by Mandarin to Potura. Atlantic Alliance was also aware that Mandarin was claiming $84,146.15 from Atlantic Alliance under the payment bond, but Atlantic Alliance was apparently unaware of when the bill was incurred by Potura with Mandarin. Approximately five months after Mandarin's filing of the instant case, Atlantic Alliance and Contravest settled Contravest's claim under the performance bond. After its settlement with Contravest, Atlantic Alliance apparently discovered that $75,670.12 of Mandarin's bill was incurred before December 10, 1996. Based on this information, Atlantic Alliance asserted at trial that, had it known that Mandarin had not been paid by Potura the $75,670.12 incurred before December 10, 1996, Atlantic Alliance would have set off this amount from its settlement with Contravest. Atlantic Alliance contended it thus had detrimentally relied on Mandarin's dealing with Potura.
Significantly, it is undisputed by the parties that but for estoppel that Mandarin would be entitled to the full amount requested as Atlantic Alliance advances no alternative basis, other than estoppel, for the affirmance of the trial court.

II. LAW

A. CONSTRUCTION OF PAYMENT BOND
The payment bond issued by Atlantic Alliance to Potura contains the unconditional requirement that Atlantic Alliance *485 pay materialmen, such as Mandarin, when payment for material is not made by Potura. A payment bond is construed according to contract principles and is construed in favor of granting the broadest possible coverage to those protected by the bond. United Bonding Insurance Company v. City of Holly Hill, 249 So.2d 720 (Fla. 1st DCA 1971); Lambert v. Heaton, 134 So.2d 536 (Fla. 1st DCA 1961).

B. ESTOPPEL
The doctrine of equitable estoppel requires that the following elements be shown as a prerequisite to its application: (1) a misrepresentation of material fact by a party, which is contrary to a later asserted representation or position by that party; (2) reliance on that representation by the party claiming estoppel; and (3) a detrimental change in the position of the party claiming estoppel caused by the party's reliance on the misrepresentation. See State Department of Revenue v. Anderson, 403 So.2d 397, 401 (Fla.1981); Rissman ex rel. Rissman Inv. Co. v. Kilbourne, 643 So.2d 1136, 1139 (Fla. 1st DCA 1994); Council Brothers, Inc. v. City of Tallahassee, 634 So.2d 264, 266 (Fla. 1st DCA 1994). Further, equitable estoppel, as an affirmative defense, must be alleged and proven by the party asserting it. Jarrard v. Associates Discount Corp., 99 So.2d 272 (Fla.1957); Coble v. Lekanidis, 372 So.2d 506 (Fla. 1st DCA 1979).

III. ANALYSIS
The trial court's finding of detrimental reliance by Atlantic Alliance is not supported by competent substantial evidence. Mandarin's unbusiness-like actions in signing and delivering the waivers of lien and statement of account to Potura were foolish and unwise, but did not cause detrimental reliance supporting the defense of estoppel against Mandarin and absolution from payment by Atlantic Alliance under its unconditional payment bond. The record reveals only that Mandarin, by its own imprudence, incurred a loss covered by the bond. This is one of the risks assumed by Atlantic Alliance when it guaranteed the payment of materialmen by Potura.
The pertinent acts of Mandarin occurred prior to Contravest's claim under the performance bond and Mandarin's claim under the payment bond. Atlantic Alliance knew, or should have known, all of the essential facts before settling with Contravest. However, these facts, even if not then known, do not give Atlantic Alliance the right to offset any part of Mandarin's claim against the claim of Contravest. This is clear from the testimony of Atlantic Alliance's sole witness,[1] William J. Hessert, *486 who opined that "they [Contravest] were not in violation of the terms of the bond, and therefore, there was no offset." Thus, Atlantic Alliance, when it settled with Contravest, could not have relied on Mandarin's actions, as no offset against Contravest was authorized. There is no detrimental reliance by Atlantic Alliance doing an act it was legally obligated to do. The utilization of the waivers of lien and statement of account among Mandarin, Potura, and Contravest had no impact on Atlantic Alliance's settlement with Contravest. Anderson, 403 So.2d at 401; Rissman, 643 So.2d at 1139; Council Brothers, 634 So.2d at 264.
The confusion surrounding the instant case stems from there being two claims: one, under the performance bond asserted by Contravest; and the other, under the payment bond asserted by Mandarin. Each claim is separate, distinct, and unrelated to the other. Atlantic Alliance had a duty to Contravest under the performance bond and a separate duty to Mandarin under the payment bond. These were risks assumed by Atlantic Alliance when it issued its bonds. When Atlantic Alliance paid Contravest, it could not claim payment to Contravest as a defense against Mandarin. Coordinated Constructors v. Florida Fill, Inc., 387 So.2d 1006 (Fla. 3d DCA 1980). Thus, Atlantic Alliance's only recourse is to sue Potura for violation of the provisions of the payment bond and to levy on the security, if any, given by Potura to induce Atlantic Alliance to issue the payment bond.
Furthermore, from the time Mandarin filed suit against Potura and Atlantic Alliance, which was five months before Atlantic Alliance's settlement with Contravest, Atlantic Alliance knew the exact dollar amount claimed by Mandarin. During this period Atlantic Alliance had every opportunity, while litigating with Mandarin, to investigate and determine the point in time when Mandarin's bill was incurred and all other factors germane to the exercise of its right of offset against Contravest before settling. It is well settled that, in such circumstances, detrimental reliance cannot occur. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514 (Fla. 2d DCA 1967), cert. den., 210 So.2d 870 (Fla.1968) (one cannot claim an estoppel where he had actual knowledge of the facts or the means of acquiring knowledge); Therrell v. Reilly, 111 Fla. 805, 151 So. 305 (1932) ("Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled....").
Mandarin also argues that it was entitled to 18 percent interest on the amount owed to it by Atlantic Alliance. We find no error in the trial judge's ruling on this issue and, accordingly, AFFIRM.
The other issues raised by Mandarin do not warrant discussion in view of our ruling.
We REVERSE and REMAND with instructions to enter judgment in favor of Mandarin for $84,146.15, plus prejudgment interest of 10 percent per annum and attorney's fees.
BENTON, J., concurs; MINER, J., dissents with opinion.
In deciding to reverse the judgment below, the majority seemingly approves a deceptive scheme willingly and knowingly participated in by appellant, which resulted in the loss by appellant of thousands of dollars incurred when its partner in deceit took the money and ran, as they say. Since I believe that Mandarin, through its own folly, brought this loss upon itself, it seems to me fundamentally unfair for the majority to saddle Atlantic Alliance, an innocent party, in my view, with the obligation to make Mandarin whole. Accordingly, I respectfully dissent.
*487 It is not contested that Mandarin supplied paint and other supplies to Potura, a painting subcontractor involved in the construction of an apartment complex. It is likewise not disputed that for almost a year Mandarin never requested, received, or apparently demanded any payment for these goods from any party. Instead, as the majority states, Mandarin "routinely and repeatedly gave Potura signed waivers of its mechanics liens." These waivers were blank as to amount and Mandarin even submitted a sworn, blank, final statement of account in order that Potura might be paid.
Having knowingly aided and abetted Potura in perpetrating its dishonest scheme by fraudulently assuring all interested parties that Mandarin had indeed been paid and having done so not on a singular occasion, but routinely, over an extended period of time, in sworn documents, Mandarin now asks the courts to make it whole out of the deep pocket of a bonding company. The trial judge may have erred in basing his decision on principles of estoppel, but the result he reached was, in my view, eminently correct. If Mandarin wants its money, it should be required to look to its co-perpetrator in fraud rather than some innocent party.
NOTES
[1] Atlantic Alliance called only one witness at trial, William Hessert, and he testified as follows concerning detrimental reliance:

Q. Okay. And what documents did you refer to in reachingbefore you entered into the settlement negotiations with
A. First of all, I looked at the performance bond which requiredin order for the surety to have any obligation to ContraVest, they would have had to make payments in accordance with the contract documents. And I reviewed the contract documents which provided that no payments will be made without releases of liensI could go into the exact wordinguntil certain conditions have been met, which included receipt on releases of liens and getting releases on prior payments. So I determined that they had gotten those releases.
And I also reviewed the documents with regard to Mandarin that indicated that they had been paid in full, and, therefore, ContraVest had complied with their obligation under the bond, and, therefore, there would not have been an offset because of any failure to get those documents from Mandarin.
Q. Okay. Prior to reviewing the claim and meeting with ContraVest, did you happen to be in possession of a copy of the sworn statement of account dated December 9th, which is marked as Defendants' Exhibit D1?
A. Yes. I relied on that in making our settlement with ContraVest.
Q. How did you rely on that?
A. I relied on that to the extent that they had not made any payments after that exceptin concurrence with that release and that sworn statement, they were not in violation of the terms of the bond, and, therefore, there was no offset. Had they not gotten those releases and had we been liable to Mandarin for amounts between the prior release and that last payment, there would have been an offset against the amount that we would have paid ContraVest, and that money would have otherwise been available to pay Mandarin. (Emphasis added).